## W. B. WORD *v.* E. L. SYKES.

1. CONTESTED ELECTION. *Fraud. Burden of proof.*
   Where fraud is charged the burden is always upon the contestant to show both fraud and injury to himself in the conduct of the election and count of the vote, and that he received the greatest number of legal votes.

2. SAME. *Fraud. Possible injury. Evidence.*
   The possibility that a contestant might have been damnified by irregularity or fraud is not enough, though he may show such possibility as tending to prove that, in fact, he was injured, and he may show this by any proof admissible in any other inquiry as to fraud.

3. SAME. *Attempts at fraud. Evidence.*
   Testimony as to frustrated attempts to commit frauds is inadmissible as irrelevant and incompetent.

4. SAME. *Irregular voting places. Right of commissioner to reject returns from. Fraud.*
   Where some of the electors withdraw from the regular voting places on account of alleged frauds and establish for themselves boxes at which the voting is fairly, openly, and honestly conducted, the commissioners of elec-

tion may reject the returns from such boxes. Whether the votes cast at the regular voting places should be counted depends upon the proof as to actual frauds committed there.

5. CONTESTED ELECTION. *Box illegally taken from officers. When counted. Case in judgment.*

Friends of a candidate obtained possession of a box, carried it to the county-seat, and presented it in time to the county commissioners, demanding that it should be counted, which was refused. Two months afterward they presented it to the court, asking that it be then opened and counted, offering proof that it had been unopened. *Held,* that it was the duty of the court to hear all the evidence touching the condition of the box, and if satisfied that its contents remained undisturbed to open and count it.

6. SAME. *Evidence. Statements of officers.*

It is not competent to prove statements of an inspector as to the conduct of an election where such statement would contradict his own return.

7. SAME. *Evidence. Prior acts and declarations.*

It is incompetent to prove acts and declarations of a candidate or his supporters at an election which was held two years prior to the one contested.

8. SAME. *Marking as voted parties who have not. Fraud.*

Testimony tending to show that men have been marked on the poll-books as voted who in fact had not voted is directly competent as proving fraud and the participation therein of those connected with the management of the election.

9. OFFICERS OF ELECTION. *Refusal to answer questions. Self-crimination.*

Inspectors and clerks of election have the right to refuse to answer any question tending to subject them to criminal prosecution, and they should be allowed to judge of this question.

10. RETURNS. *How sustained. Testimony of canvassers.*

It is entirely competent to sustain the returns by the testimony of the canvassers who made them. It is always competent to sustain official acts by the testimony of those making them.

11. CERTIFICATE OF ELECTION. *Prima facie presumption. When it fails.*

The *prima facie* presumption of the correctness of a certificate of election never attaches where it is shown that there was any intentional wrong on the part of those who made the count of votes.

12. SAME.   *When a box will be entirely rejected.*

Whenever by any means the *prima facie* presumption of correctness of a certificate of election is overthrown, either side may show what was the true state of the vote at the box in question, which is never to be entirely thrown out if it can by any process be discovered what that true state was. When this is impossible, and in this event only, can the entire box be rejected.

APPEAL from the Circuit Court of Monroe County.

HON. J. W. BUCHANAN, Judge.

Contestant's petition alleges the holding of an election for sheriff of Monroe County, November 6, 1883, at which Sykes was the candidate of the Democratic party and the contestant was the candidate of the "True Democratic party." Petition further alleges that by conspiring between Sykes and the Democratic executive committee the State board of election commissioners were induced to appoint three Democrats, friends and partisans of Sykes, election commissioners for Monroe County, who appointed Democrats and friends and partisans of Sykes election officers at each of the voting precincts of the county. The petition admits that the election at the several boxes of North Aberdeen, South Aberdeen, Darricott's Shop, and Athens was fairly conducted, though fraud and unfairness were intended and attempted by the Democratic party, and charges that the election at all the other boxes was fraudulent and unfair on account of the exclusive appointment of friends and partisans of Sykes as election officers, the refusal of said officers to allow challengers of the "True Democratic party" to be present in the rooms where the election was held, "ballot-box stuffing," the refusal of election officers to count the votes publicly, and false counting of the ballots. Petition further alleges that the "people" at the boxes of Rome and Centre Grove, believing that the election officers at those boxes would not conduct the election fairly, established opposition boxes of their own with officers selected by them, held an opposition election, and made returns thereof to the county election commissioners, who refused to receive their returns but received and counted the returns from the regular boxes. At the Walton's Store box after the voting the friends of the "True Demo-

crats," to prevent fraud in the count, took the box away from the election officers and carried it to Aberdeen, and the next day offered to turn it over to the county election commissioners to be counted. The commissioners refused to receive it and contestant asks that it may be opened and counted by the court. It has never been opened and is yet in the possession of those who took it from the election officers. Contestant also avers that he received a majority of the legal votes given at said election and was consequently elected. Contestee demurred to the petition, specifying twelve grounds of demurrer. Demurrer was sustained as to three of said grounds and the petition was accordingly amended by the omission of the allegations of frauds intended and attempted at North Aberdeen, South Aberdeen, Darricott's Shop, and Athens, the allegations as to the voting at the "people's" outside boxes at Rome and Centre Grove, and the allegations as to the election at Walton's Store, culminating in the seizure of the ballot-box by outside parties before the vote was counted by the regular officers. Contestee in his answer asked that issue be made as to whether contestant received the majority of the legal votes cast and that the same should be tried according to law. By consent of the parties the cause was tried by the judge without jury. During the trial of the cause the contestant moved to suppress the returns of the boxes of Muldon, Rome, Centre Grove, Love's School house, Boyd's, Cotton Gin, and Riggan's Chapel, and to throw the burden of proof as to the number of legal votes at these boxes on the contestee. Contestee objected that burden of proof is on contestant from the beginning, to show that he received the greatest number of legal votes—that no testimony was introduced as to Boyd's and Riggan's Chapel, and that the testimony introduced did not invalidate the returns of the election officers. The court sustained the objection and overruled the motion, to which ruling contestant excepted. Contestant also specially excepted to the action of the court and took exceptions by special bills, as follows:

1. In excluding testimony offered to prove declarations and statements made by J. M. Gathings, one of the inspectors of election at Muldon, first, as to the number of votes, and second, as to the fact

that pieces of paper were put into the box as votes of men who were not present and who did not vote; excluded because hearsay and tending to impeach the returns of Gathings as inspector.

2. In excluding testimony offered to prove statements made two years before by one of the election officials and by contestee as to frauds in the election of 1881.

3. In excluding as testimony a telegram received by the operator at Aberdeen from Muldon on the evening of the election, because it was not shown that Evans sent the same and because irrelevant. (The telegram is not set forth in the bill of exceptions.)

4. In excluding testimony of Wheeler Watson that he had a correct list of the names from the registration book as having been marked "voted," as shown on the poll-book of Muldon, and that he had made search for the persons so marked through the territory of the Muldon box and could not find them.

5. In excluding testimony of George W. Elkin that on the night of the election he requested the managers of election at Walton's Store to count the votes given at that box and that they refused to do so; excluded as hearsay and not in issue by the amended petition, as was also the testimony of Stewart as to other acts and proceedings at the same time and place.

6. In sustaining the refusal of witnesses who had been election officers at Muldon to answer questions upon the ground that it might criminate them to do so.

7. In excluding as irrelevant the testimony of W. H. Vassar concerning the election at South Aberdeen, admitted by the petition to have been fairly counted.

8. In excluding as hearsay, irrelevant, incompetent, and not connected with the issue, the testimony of E. K. Leon to prove statements of G. D. Sims, an election commissioner of Monroe County and inspector at the Rome precinct, made a day or two before the election as to how said election was to be conducted.

9. In excluding as hearsay and irrelevant the testimony of J. R. Willis that a day or two before the election he heard W. D. Walton, the peace officer at Walton's Store, say that they would settle it how the election should go.

10. In admitting the testimony of W. C. Pearce, being examined on his cross-examination as to the election at Smithville, at which precinct witness had acted as inspector, and questioned as to the fairness of the election at that box and the correctness of the returns made by him as an inspector. Objected to by contestant upon the ground that if the election returns could not be impeached by an officer they could not be sustained, but the objection was overruled.

Contestant brought into court the box used by the commissioners and inspectors at Walton's Store and proposed to prove that the box had been safely kept with its contents undisturbed, and that it had been taken on account of the refusal of the election officers to count the vote, and moved the court to have the box opened and the votes counted, whereupon contestee objected that the allegations in the petition with reference to Walton's Store had been stricken out on demurrer and the court refused to admit the testimony and to count the vote, to which ruling contestant excepted by special bill.

The court rendered judgment that contestee received a majority of the legal votes cast from the unimpeached returns as admitted in the petition, and from this judgment the contestant appealed.

*R. Davis,* for the appellant, argued orally and in writing.

1. The office of sheriff is an attribute of the sovereign power of the State and can only be parted with in the manner prescribed by law. At common law a claim to exercise its functions was questioned by writ of *quo warranto,* which imposed the burden of proof upon the claimant. Our statute has changed the mode of procedure but the proof is still with the claimant. He is not, however, required to furnish plenary proof and may rest upon the *prima facie* case made by his certificate of election. If the return showing the result of the voting can be tainted with fraud the *prima facie* is disposed of and the claimant must make further showing, and this will require full proof that the will of the majority of the voters at the election was in his favor, because it is the will of the majority that confers the office. If he shall be unable to develop fully and show the will of the majority in his favor the contestant may show

his claim.   If there is anything in the manner of holding the election which involves the will of the people in such obscurity that it cannot be fairly ascertained, then the right of the State prevails and the election will be set aside and a new election ordered.  The grounds that afford reason for contest are :  First, that a vote has been put into the ballot-box by one who was not authorized to vote ; second, fraud concurred in by the candidate and inspectors, and third, by inspectors and aiding adjuncts.   If the contest is predicated upon the first ground, it will only be necessary to discard the illegal vote and re-cast the result.   If the second ground is shown to exist, the election will be annulled and a new election ordered ; and the existence of the third is to relegate all the parties to the common-law rule, and if either can clearly establish the *will* of the majority of the votes *actually* cast he will take—if the uncertainty so obscures the result that it cannot be made clear the State will retain the franchise.   The ancient rule was that the king proceeded against one who usurped any office, franchise, or liberty by writ of *quo warranto*.   In theory the king was the fountain of honor, of office, and of privilege.   The subject who claimed the right to exercise a franchise in answer to a *quo warranto* was required to show his title, and, of course, had the burden of proof.  3 Bl. Comm. 262 ; 14 Am. Rep. 314 ; 55 N. Y. Rep. 525.   This common-law rule has been reversed by our statute so far as to make the certificate of election *prima facie,* and this must be overcome by proof furnished by the contestant or the State, as the case may be.   Code of 1880 ; 14 Am. Rep. 314 ; 55 N. Y. 314.   The election, not the return, is the foundation of right to an elective office, and it is competent in a proceeding to try title to go behind the ballot-box and purge the returns by proof that the votes were received and counted which were cast by persons not qualified to vote.   55 N. Y. 525 ; 14 Am. Rep. 317 ; 27 N. Y. 45.

2. The second ground is fraud upon the part of the inspectors, participated in by the candidate, and this ground, I maintain, is law ; and, if law, the election must be set aside and annulled and a new election ordered if proof sufficient to maintain the charge of conspiracy and fraud is furnished.   14 Am. Rep. 319 ; 55 N. Y.

525; McCrary 440, 441, 442. The effect of the decision of the court below was to suppress that large and full investigation which is necessary to ascertain with certainty the *will* of the majority of the voters at the election, the essence of right to an elective office. 14 Am. Rep. 320; 55 N. Y. 525; 47 Miss. 34–36; 51 Miss. 309. The actual fact of conspiracy may be inferred from circumstances, and the concurrent conduct of defendants need not be proved. Any concurrence of action on a material point seems to be sufficient to enable a jury to presume concurrence of sentiment. Wharton Am. Cr. L. 695, 696. The vote of the Walton box was cast out and denied any appearance for any purpose. This was error. The rule is, the vote of the precinct is not to be disregarded. The voters are not to be disfranchised because no return is made or because it has been rendered valueless by the fraud or mistake of others. 55 N. Y. 525; 14 Am. Rep. 321.

3. The statement of a witness that his answer *might* criminate him does not give him exemption. The rule of law requires a witness to be certain, not speculative. He must say that he believes the answer will criminate him. The rule is, the witness must judge in the first instance whether the answer will tend to prove him guilty of a crime, and unless he is able to say that he believes it will he is not entitled to claim the privilege. 1 Grl. Ev. 451. I admit the law to be, that the failure by a witness to answer on the ground that he believes it criminates him is not cause of accusation against the witness, yet I do insist that it is cause of *accusation* against the return of an election. The return must be free from *taint*, and silence does taint, although it does not afford proof to justify punishment. The testimony established the conspiracy, established the fraud, established the confusion in the count, showing that the whole election at every box was tainted, and reducing contestee to the duty to introduce proof. As he failed to do so, the court should have dismissed the case and ordered a new election.

*Orr & Sims*, on the same side.

1. The facts presented in the bill of exceptions as to Walton box show an infamous combination on the part of the inspectors and clerks at Walton box to deprive the appellant of his votes there.

The law requires the ballots at the close of polls to be *publicly* counted. McCrary on Elections, § 393, assigns good reasons for this. This box should have been counted, and as the court refused it, Word in the count is entitled to two hundred and fifty votes at that precinct. The court refused to count this box because it was not kept in possession of the conspirators, counted by them, and returned by them to the three county commissioners at Aberdeen according to law. It is true the ballot-box and votes therein contained were taken out of the possession of the inspectors and clerks who had been appointed by the county commissioners, but it was to rescue them from pollution and corruption. The inspectors and clerks had shown that they intended to falsify the box.

2. The appellant proposed to prove the intention, as expressed, of various inspectors as to their purpose in conducting the election so that appellee and his ticket should be counted in. He proposed to show by the managers of the election that there had been frauds, ballot stuffing, and ballot stealing. He proposed to prove the declarations, admissions, and statements of various officers of election as to their particular frauds. All these were excluded. When we get a witness who is willing to tell everything, he is not permitted to do so on the ground that he cannot contradict his return. The sheriff's rule is adopted that far, so as to prevent him from contradicting his own return, and still, when we wish to apply the sheriff's rule and prove his false and fraudulent return by his admissions and confessions as to how he perpetrated his frauds, the appellant was not permitted to do that on the ground that it was hearsay. Pray, then, under the rules of evidence, as laid down by the court below in this case, how can you prove the fraud of an election officer except by some third party who chanced to see him commit—a thing likely to occur very rarely? There is not the slightest analogy between the managers of election and a sheriff. The sheriff is a bonded officer, liable for making up a false record, and is one of the powers, united with other powers, who make up *the judicial records* of the country. Hence the rule that he must not contradict his own record.

3. When Pearce, one of the county commissioners, who appointed

himself one of the inspectors at Smithville, was called on by ap-
pellee to prove that his returns were true, that the election there
was fair, etc., the court permitted him to make the testimony.
Thus the conspirators were permitted to prove that in managing
the election they did just in all things as inspectors and clerks, and
when the appellant chanced to find an inspector who was willing to
expose the rascalities of his associate judges and clerks, he was not
permitted to do so on the ground that he was falsifying his return.
The statement of the rule adopted by the court carries its fallacy on
its face. The argument of Judge John A. Campbell and his associates
and the authorities cited by them in the "electoral count" of 1877
(see p. 408) over Louisiana, Florida, and South Carolina most tri-
umphantly established the proposition that an intentionally false
and fraudulent return was to be rejected IN TOTO. In addition to
this, it was proposed to prove that persons since the election had
made search throughout the territory of the precinct for other men
whose names were marked "voter," and they could not be found
after diligent search. This was rejected by the court. True, it
was negative testimony; but facts are often satisfactorily estab-
lished by negative testimony. After having shown that the returns
had been contaminated, appellant moved the court to suppress these
boxes or to sustain the *prima facie* case of fraudulent returns so far
as to require proof of appellee as to their fairness. This the court
refused, and gave an instruction at close of testimony that sustained
the boxes at Muldon, Rome, Centre Grove, Love School-house,
and Cotton Gin. The judge was acting as *court and jury*, and the
appellant, when he introduced testimony clearly showing that the
*returns* of the judges and clerks were corrupt and false, and when
he showed, or wanted to show, and could have shown by Elkin and
a dozen others, that they rescued the Walton's Store box from con-
tamination and preserved it safely and had it in court and ready to
be counted, and that appellant had three hundred votes in that box
from *bona fide* voters, the case was made out for appellant. The
time had come in progress of the case when the burden of proof
under law had shifted, and it was then incumbent on appellee to
explain away the very strong *prima facie* case made out against the

fraudulent certificates of election which had been issued to him by the conspirators. As the case then stood under the evidence, Word was entitled to the office.

*Sykes & Bristow, J. M. Allen,* and *S. J. Shields,* for appellee.

The court will perceive that this petition is and can only be a simple proceeding under § 150 of the Code of 1880, by which the only issue that can be presented is, *which of the parties received the greatest number of legal votes* for sheriff at the November election ? The contestant avers that *he* received the greatest number of legal votes. It then simply devolves on him to *prove* it. Nothing *less* will serve his turn—nothing more will do him any good. *Pradat* v. *Ramsey,* 47 Miss. 34; *Sublette* v. *Bidwell,* Ib. 266 ; *Ex parte Wimberly,* 55 Miss. 449.

1. The court then properly sustained the demurrer to the allegations of the petition as to the frauds *intended* but not carried out at *North Aberdeen, South Aberdeen, Darricott's Shop,* and *Athens.* Allegations as to which was *intended* are wholly irrelevant, cannot affect the controversy, and have no bearing whatever upon the *issue* —" Which one *actually received* the greatest number of legal votes ?"

2. We do not think it necessary to argue the propriety of excluding on demurrer the allegations in the petition as to the boxes at Centre Grove and Rome. These allegations are to the effect that the friends of the contestant, *fearing* that the regularly appointed and sworn officials would not conduct the election fairly, improvised a box and held an opposition election of their own. We need not argue that this was simply a nullity and a farcical one at that. The only circumstances in which election officials may be chosen by the electors present, *pro re nata,* are those named in § 133 of the Code of 1880, where " no inspectors are appointed or *all the inspectors appointed fail to attend.*"

3. The court also properly sustained the demurrer to that portion of the petition relative to the election at Walton's Store. The law on this subject is very plain. An *election* is not over until the votes are all received and deposited, the box opened, the votes counted, and the result ascertained and certified and returned to

the county election commissioners, whose only duty is to canvass the *returns* and ascertain and declare the whole result. Code 1880, § 138. To constitute a valid election at any voting place, three things are absolutely indispensable, *viz.:* It must be held at the *proper time;* it must be held at the *proper place,* and it must be held by the *proper officials. Pradat* v. *Ramsey,* 47 Miss. 34; *People* v. *Cook,* Brightley's Election Cases 450, 451; *Thompson* v. *Ewing,* 1 Brewst. 99. No return having been made by the inspectors of election at Walton's Store, the allegations of the petition as to that box were properly disregarded. *People* v. *Backus,* 5 Cal. 275; *Whipley* v. *McClune,* 12 Cal. 362; *Organ* v. *State,* 26 Miss. 83; McCrary on Elections, § 450.

4. The appointment of inspectors of election at the various boxes is largely a matter of discretion with county commissioners. Code 1880, § 133—and the improper exercise of this discretion cannot affect the election unless it be *proven* to have *resulted* in one party's receiving votes, he is not entitled to or being deprived of votes he is entitled to. *Pradat* v. *Ramsey,* 47 Miss. *supra; People* v. *Cook,* Brightley's Election Cases and note on page 448. The contestant, however, says he has received a majority of the legal votes. An affirmative proposition. The petitioner, who claims the office, must show that he has been elected by the people and is entitled to the office. *Sublette* v. *Bidwell,* 47 Miss. 271.

5. The contestant moved " to *suppress* the *returns* from Muldon, Love's School-house, Centre Grove, Rome, Cotton Gin, Boyd's, and Riggan's Chapel " [as to which *last two boxes* no testimony of *any kind* was introduced], "and throw the burden of proof as to the number of legal votes at these boxes on the defendant." Herein contestant's idea seems to be that the contestee, Sykes, in this case stands on the " *returns,*" and that the moment any unfairness or indirection is shown at any box the " *returns* " from that box are knocked out from under Sykes and given to contestant, or that on a pinch the court will declare the whole election void and order a new one. The error lies in confounding this proceeding under § 150 of the Code with the proceeding by *quo warranto* under chapter 72. In the latter case the *contestee does,* in answer to the

writ, stand on the returns. If these returns are *tainted* he must supplement them by other proof, and, failing in this, the court will either give the election to the party proven by outside evidence to have received the greatest number of legal votes, or, in the absence of such evidence, where all the returns are discredited, will declare the election void and render a simple judgment of *ouster*, leaving the board of supervisors to fill the vacancy under § 156 of the Code of 1880. But in proceeding under § 150, the contestee does not stand upon his "*returns*" at all ; he stands as a simple *defendant* in a suit commenced against him by contestant as plaintiff, who asserts that *he* received the greater number of legal votes at the election. The burden of proof is upon the plaintiff from beginning to end. The only authorities cited by counsel below were cases of *quo warranto,* where the *prima facie* case made by the *certificate of election* and *returns* had been overcome by proof of fraud in the returns. We have seen that defendant's *prima facie* case in *this* proceeding is not on his *certificate* or *returns,* but simply on his position of *defendant,* as in an action of *assumpsit.*

6. As to the testimony that ballots had been put into the boxes not representing legal votes, we might rest on the legal proposition that, even if *proven,* the reception of illegal votes cannot affect the result unless it be shown *for whom* these illegal votes were counted. *People* v. *Cicott,* 16 Mich. 295 ; *Mann* v. *Cassidy,* Bright. Election Cases 351 ; *Ex parte Murphy,* 7 Cowen 154 ; *McDaniel's Case,* Bright. Election Cases 238 ; *Pradat* v. *Ramsey,* 47 Miss. *supra.*

7. An effort was made to prove statements made by the sworn officers of election after the election contradicting their sworn returns. This testimony was properly excluded by the court. *Stone* v. *Montgomery,* 35 Miss. 83 ; *Planters' Bank* v. *Walker,* 3 S. & M. 407 ; *Von Comper* v. *Snyder,* 3 How. 66 ; *Burgess* v. *Wareham,* 7 Gray 345 ; *Braley* v. *French,* 28 Vermont 546 ; *Barclay* v. *Howell,* 6 Peters. 498 ; *Lawrence* v. *Kimball,* 1 Met. 524.

*J. M. Allen,* for appellee, also argued the case orally.

CHALMERS, J., delivered the opinion of the court.

This is a contest under § 150 of Code of 1880 over the question

of who received the greatest number of legal votes for the office of sheriff of Monroe County on the 6th day of November, 1883.

The petition contains the most minute as well as sweeping charges of fraud at said election upon the part of all connected with it, most of which are as specifically denied, but as to some of which demurrers only were interposed.

As the case must go back for a new trial, we shall allude only to such questions as must necessarily be decided, since it seems to us that the governing principles underlying these inquiries are always the same and are generally well known.

The cardinal rules controlling such cases are these: Where the charge is fraud, the burden is always upon the contestant to show both fraud and injury to himself in the conduct and count of the canvass, and that, in truth and in fact, he received the greatest number of legal votes. Until he has proved both of these ordinarily he can never recover. Unless he received a majority of the legal votes he has no right to bring his suit, and he can complain of no sort of irregularity or fraud save when he affirmatively shows that he was thereby damaged; the fact that he *may have* been so is not enough, though he may show such possibility as tending to prove that in fact he was injured, and he may show this by any proof admissible in any other inquiry as to fraud. But always his obligation is to prove that he was really elected by a plurality or majority of legal votes. Unless by the whole proof he has done so, his case must be dismissed or decided against him.

Premising this much, we pass upon the several errors assigned, or such of them as seem important.

1st. There were four boxes, at which both sides admitted that the canvass of the votes was in fact fair and the returns correct, to wit: Aberdeen, S. Aberdeen, Athens, and Darricott's. As to these, the court correctly sustained a demurrer, though contestant claimed that as to these the friends of contestee attempted in every possible way to perpetrate frauds, which were only prevented by the vigilance of his friends. The attempt to commit frauds which it is admitted was frustrated was irrelevant and incompetent in proof.

2d. At two other boxes, to wit: Centre Grove and Rome, it is charged that the result reached was grossly unfair and unjust, this result being produced by ballot-box stuffing and frauds of the grossest character practiced by the officers of election, and that to avoid them all the friends of contestant seceded and established elsewhere for themselves boxes which were fairly, openly, and honestly conducted, both as to the reception and the counting of the vote, though the results at such boxes were rejected by the county commissioners, while the fraudulent votes were received and counted.

As to these two boxes, it was proper to have sustained the demurrer as to the pretended outside boxes, all charges of fraud being denied. Whether the votes in the regular boxes should have been counted depends upon the proof as to the actual frauds alleged to have been committed there. At the Walton Store box a difficulty arose after the voting was finished as to the manner in which the counting should be carried on, the one side insisting that it should be done " publicly," as the law directs, and the other side contending, so it is said, that they might count in private. Both sides sought the aid of an armed force from Aberdeen. The friends of the contestants obtained possession of the box, leaving the key with the friends of the contestee, and carried it to Aberdeen and presented it in time to the county commissioners and demanded that it should be by them counted, which was refused. They kept the box several months, presented it to the court, and demanded that it be then opened and counted, which was refused, though they offered to prove that it had been unopened and untampered with. This was wrong. Their act in seizing and carrying it to Aberdeen may have been uncalled for and unauthorized, but it was nevertheless the duty of the court to have heard all the evidence touching the condition of the box, and if satisfied that its contents still remained undisturbed, to open and count it. Unless court or jury were so satisfied (the burden being on the contestant) it should have been rejected; but the rights of the voters is the primary end to be considered, and their claim to have their votes counted properly cannot be defeated, if the jury shall believe that those votes

remain wholly untampered with, as was offered here to be proved. Certainly, the whole vote of the precinct should not be defeated by the illegal act of those who carried off the box if that vote can now be successfully established by other proof. It is to be remarked that, discarding this vote altogether, the petition was perhaps demurrable, since, leaving it wholly out of view, petitioner did not allege that he received a majority of all the legal votes cast; but including it he did achieve such majority if it be true, as alleged by him, that he received a majority of nearly three hundred at that box. If it can now be done, the vote actually cast at the election at that box should be counted. A total inability to do this, after all proof is admitted, alone can excuse this court from passing on it. For this error, if there were no others, the judgment must be reversed, and this necessarily opens up the whole case.

We cannot affirm on the facts, despite these errors, both because we cannot say what harm was done by improperly sustaining the demurrers, and because the facts leave it doubtful who in truth received a majority of the legal votes cast.

We pass to the special bills of exceptions filed, believing that a disposition of them will sufficiently indicate how the others should be disposed of.

1st. It was not competent to prove that Gathings, one of the inspectors at Muldon, made statements either before or after the election as to how he intened to, or how, in fact, he had returned the box, both because this was hearsay and because Gathings could not thus contradict his own return.

2d. It was incompetent to prove the acts and declarations of Sykes or of his supporters at the election two years before. The time was too remote, and admitting what was then said and done casts no light on the present election.

3d. The bill of exceptions with regard to the telegram sent by Evans is overruled, because from this record it is unintelligible. He who alleges error must prove it.

4th. The testimony of Wheeler Watson, tending strongly to show that many men were marked "voted" at Muldon who in fact had not voted, were not in the precinct, and were, some of them, dead

before the election should have been admitted. We can scarcely see how anything could be more directly competent, both as proving fraud at the box and the participation therein of those connected with the management of the election. It is to be remarked that no provision of law authorizes the books to be written on at all. The clerks should write down the names of the voters on lists of papers, and these should be sent up with the boxes; but as all parties here adopted the other method, we let it pass.

5th. The testimony given by Elkin and also by Stewart with reference to Walton's Store box should have been heard. We have already decided that this box should have been opened and counted if the vote was established, and we now declare that everything tending to throw direct light on what occurred with reference to it should have been heard, and there should have been a decision as to whether the box remained untampered with.

6th. The inspectors and clerks of election had the right to refuse to answer any question which tended to subject them to a criminal prosecution, and the court was right in letting them judge of this question. This remark applies to many cases where the question arose as to various officers. Whether the contestee himself could raise this question and make this objection where the witness did not, and was entirely willing to answer in relation to his own returns, we do not now decide, as no authorities on the point have been produced before us. Only one witness was shown to have been willing to answer.

7th. The testimony of Vasser as to the frauds attempted but not committed at the Aberdeen box was inadmissible.

8th. The attempt to prove by Leon that Sims, an inspector at Rome, had said that the inspectors intended to give that box to the contestee if they had to do it by stuffing the ballot-box was incompetent, because Sims' official act could not be contradicted by hearsay. It is to be remarked that Sims is shown by the record to have been an inspector at Rome, though from other parts of it it was suspected that he was not. He was a commissioner for the whole county.

9th. It was incompetent to prove by Walton, the peace officer at Walton's box, that the inspectors were going to stuff the

ballot-box at that place.   The peace officer had nothing to do with the counting of that box.   If he *saw* ballot-box stuffing or miscount, it could then be proven by him, otherwise not.   He had no official character except to preserve the peace.

10th. It was entirely competent to sustain the returns as made by the testimony of the canvassers who made them. It is always competent to sustain official acts by the testimony of those making them.

It is believed that we have thus indicated what should have been the rulings on all the questions which must arise on another trial in the court below. We append a few words as to how this case should be tried.   The petition is far more voluminous than necessary. It sets forth all the alleged errors committed.   It only needed an allegation that petitioner received a majority of the legal votes cast. This it contains in the closing paragraphs.   All else was proof. The petition may yet be amended as counsel may be advised.   It starts with the legal presumption that the certificate has been given to the right man, and this presumption continues throughout the whole trial except where overthrown by testimony.   Unless, therefore, on the whole trial the contestant affirmatively shows that he has received a majority or plurality of the legal votes cast, he can never succeed.   In this case he can first rely upon the majority (if he has one) cast for him at the four undisputed boxes of Aberdeen, S. Aberdeen, Athens, and Darricott's.   He may attach the other boxes in any way he chooses, and if he does so for fraud he must affirmatively show the fraud. This he may do by any means appropriate to that issue, and he overthrows the legal presumption against him when he shows the actual participation in any unfair and fraudulent practice of those who handled the votes or returned the count at that box, and in so doing he may adopt his' own order of proof.   No mere error, omission, or irregularity on the part of the returning officers can result in setting aside the certificate.   Any practice which may be thought purposely to have been resorted to for influencing the result will have that effect if those who made the return knew of or sanctioned it.   Speaking for myself alone, and not for the court, I think that the *prima facie* presumption of correctness in the certificate fails whenever it is affirmatively shown

that (as is alleged in this case) one side only participated in making out the returns and the other side was excluded from conducting the election and making the count. In such case, to speak more accurately, I think the *prima facie* presumption of correctness never attaches. We all think that it fails where it is shown that there was any intentional wrong on the part of those who made the count. Whenever by any means this *prima facie* presumption is overthrown, either side may show what was the true state of the vote at that box, which is never to be entirely thrown out if it can by any process be discovered what that true state was; where this is wholly impossible, and in this event only, can the entire box be rejected. Going through the whole county in this way, the contestant can only have a verdict when he affirmatively shows that he had a majority in the entire county of the legal votes cast. Unless he does this, verdict must go for the contestee.

Our whole election laws contemplate fairness, justice, and a perfect ascertainment of the will of the voters. This inquiry should always be the guiding star of the investigation, and nothing save a positive requirement of the statute like that as to excluding marked ballots (illustrated in *Oglesby* v. *Sigman*, 58 Miss. 502) should be allowed to defeat it, if that result can be avoided.

We have examined without citing all the authorities relied on. They will be found in the brief of counsel.

*Reversed and remanded.*