[Civil No. 596.   Filed April 16, 1898.]

[53 Pac. 173.]

GEORGE W. OAKES, Defendant and Appellant, v. S. W. FINLAY, Plaintiff and Appellee.

1. ELECTIONS — CONTEST — EVIDENCE — RETURNS OF ELECTION BOARD—CONCLUSIVE UPON CANVASSING BOARD—PRIMA FACIE IN ELECTION CONTEST—BURDEN OF PROOF ON PERSON ASSAILING CORRECTNESS.—The returns of an election board, when legally and properly authenticated, are not only conclusive upon the board of canvassing officers, but are also *prima facie* evidence of the number of votes cast, in a proceeding to contest the election; and the burden of proof is upon the person who assails the correctness of these returns.

2. SAME—SAME—SAME—BALLOTS—RECOUNT OF ORIGINAL OVERCOMES RETURNS.—Where the identical ballots cast at the election have been properly preserved so they can be recounted by the order

of the court, they will govern when there is a difference between them and the returns.

3. SAME—SAME—SAME—SAME—IDENTITY MUST BE PROVEN BEFORE RECOUNT.—One who relies upon overcoming the *prima facie* correctness of the official canvass by a resort to the ballots must first show that the ballots as presented to the court are intact and genuine.

4. SAME—SAME—SAME—PAROL TESTIMONY AS TO BALLOTS—ADMISSIBILITY.—Where the ballots rejected by the election board were not before the court in the same condition as when voted, it is error to receive parol testimony as to how they were marked to reverse or disturb the returns made by the canvassing board.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. J. D. Bethune, Judge. Reversed.

The facts are stated in the opinion.

Thomas F. Wilson, James A. Zabriskie, Charles W. Bowman, and C. W. Wright, for Appellant.

The court erred in receiving parol evidence of the contents of ten rejected ballots. In the findings in this case made by the lower court, it says: "Positive evidence was given before the court that the ten rejected votes which were taken from the package that had been opened in this court were not the same ten that were rejected. Notwithstanding there was conclusive evidence that the package had not been broken since it was sealed up by the election officers, and that it was intact. Upon the evidence that these were not the same ten ballots the court rejected them entirely and received evidence of what the ten votes were."

This was error. In the case of *Hudson* v. *Solomon,* 19 Kan. 186, opinion by Mr. Justice Brewer, the court having under consideration this identical question, sums up its conclusions in these words:—

"1st. As between the ballots cast at an election and a canvass of these ballots by the election officers, the former are the primary, the controlling evidence.

"2d. In order to continue the ballots as controlling evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the

reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with.

"As between, therefore, the ballots themselves and a canvass of the ballots, the ballots are controlling. This is of course upon the supposition that we have before us the very ballots that were cast by the voters."

It follows that next in rank to "the very ballots that were cast by the voters" the official canvass of the ballots comes; for if the procedure is to be adopted that was pursued in this case our elections would degenerate into a farce; they would cease to be a question of the will of the majority, and would drift into a swearing-match between the political hacks of the rival candidates, with a probably strong bias in the mind of the judge for the candidate of his political faith.

For these reasons, it has been held that it is error to hear oral evidence as to the contents of a lost ballot, as the canvass of the ballots in such case must control. *Spidle* v. *McCracken*, 45 Kan. 356, 25 Pac. 897; *People* v. *French*, 45 Cal. 241; *Kingley* v. *Berry*, 94 Ill. 515; McCreary on Elections, sec. 439.

Barnes & Martin, for Appellee.

DOAN, J.—This was an action brought in the district court of Pima County, by Samuel W. Finlay against George W. Oakes, to contest an election held in the city of Tucson, Arizona, on the fourteenth day of December, 1896, at which the parties to this suit were rival candidates for the office of city marshal. The returns of the election board showed that Oakes received at said election three hundred and eleven votes; that Finlay received three hundred votes. The city council of the city of Tucson thereafter, on the sixteenth day of December, met, and canvassed the returns, and declared that Oakes, the appellant, was duly elected to the office of said marshal, and issued to him the certificate of such election. The appellee, Finlay, complained in his petition that the election board in wards Nos. 1 and 2 of said city did not correctly count the ballots cast at such election, but said boards counted ten ballots for Oakes in each ward which should have been counted for Finlay. The case was tried to the court without a jury at a special term of district court,

on the fourth day of January, 1897; Messrs. Barnes & Martin and Charles Blenman appearing as counsel for S. W. Finlay, contestant, and Messrs. Thomas F. Wilson and Charles Bowman appeared as attorneys for George Oakes, contestee. The ballots cast at the said election were presented and offered in evidence. They were sealed up in two packages, one package indorsed across the folds as follows:—

"Official Ballots, Ward No. 1.
"Chas. Bowman, Inspector. Chas. H. Meyer, Geo. M. Williams, Chas. T. Connell, Judges.
"Filed Dec. 15th, 1896. R. A. J.
"Rec'd from R. A. J., Jan. 4th, 1897. Chas. F. Hoff, County Treas."

The other package (Ward No. 2) indorsed as follows, across folds:—

"Chas. T. Connell. John E. Magee, Inspector. H. Urquides, W. C. McDuffie, Judges. A. B. Spencer, Clerk.
S. B. Conley, Clerk. R. B. Kelly, Clerk.
Thos. A. Borton, Clerk.
"Filed Dec. 15th, 1896. R. A. J.
"Rec'd from R. A. J., Jan. 4th, 1897. Chas. F. Hoff, Co. Treasurer."

The packages were inclosed in brown paper wrappers, folded at each end, with a string passing round the ends and the sides, sealed with wax over the fold and over the string. The testimony of the clerks and judges of election agree that the packages appeared not to have been opened since sealing until opened in court. Charles T. Connell, recorder, testified "that the package of the Second Ward appeared to have been unopened"; "that it was not opened by him while in his possession; that his name as it appeared on the package was not as he had indorsed across the package when presented to him; that the initial letter 'T' in his name was written at the point where the paper lapped, or where the fold was made; that the letter 'T' as it appeared on the package when presented in court was not his writing; that he had not written it." When the packages were opened, there was a large string of ballots showing those voted and counted. Of the ballots to which there was no objection made by either party, there

were for contestant, Finlay, three hundred and one votes, and for contestee, Oakes, three hundred and eleven votes. In the package from the first ward, there were found seven rejected ballots on the string by themselves, and the contestant demanded that they be counted for him, which the contestee, Oakes, resisted. The court ruled that the said seven ballots be counted for contestant, Finlay, to which ruling contestee, Oakes, excepted. In the package of ballots for the second ward, besides the string of ballots that had been voted and counted, there was also a string of ten ballots purporting to be ten ballots that were rejected by the board, and counted for no one. The testimony of the officers of the election agreed to the effect that these were not the ten ballots that had been rejected by the board. The trial court held that they were not the ballots that had been voted and rejected in the count, to which ruling contestant excepted. The court then received the testimony of the officers of the election and some others as to the contents of the ten rejected ballots which these purported to be, and from the oral testimony then given decided that seven votes of the ten that had been rejected should be counted for the contestant. The court therefore held that there should be counted for Finlay three hundred and one votes, as shown by the returns and supported by the recount of the ballots, and to these there should be added seven as shown by the rejected ballots from the first ward, and seven others, as indicated by the testimony in regard to the ten votes rejected by the canvassing board in the second ward, and that these fourteen, added to the three hundred and one already returned for Finlay, would make the total of three hundred and fifteen votes, as against the three hundred and eleven for the contestee, Oakes. The court therefore found that Finlay was elected to the office, and gave judgment accordingly, from which judgment and the order denying a new trial contestee appealed, and brings the case to this court.

The appellant has presented one assignment of error: "That the court erred in receiving parol evidence of the contents of the ten rejected ballots." This seems to be the only legal issue presented in the case. The only question to be considered is whether the court erred in receiving parol testimony as to the contents of the ten rejected ballots in the sec-

ond ward, after it was satisfied that the ten ballots appearing
on the string as rejected ballots in the package from that
ward were not the identical ballots that had been voted by
the electors and rejected by the returning board, and in de-
ciding on the testimony thus received that seven of those ten
ballots should be counted for the contestant; the seven bal-
lots thus added to the count for the contestant being sufficient
to change the result of the election, and entitle him by a
majority of four to the position and the emoluments of the
office. This court is not called on to determine whether or
not the reasoning of the lower court was correct and the con-
clusion arrived at the proper and logical one, from the manner
in which the ballots were worded and marked, as indicated
by the testimony given by the witnesses; but the legal propo-
sition presented by the appellant is, that it was error on the
part of the court to interfere with or overturn the return of
the election board, and the findings of the canvassing board
based thereon, upon any evidence other than the identical
ballots that were cast at the election by the voters, and on
which the election board made their return.

In determining the results of our popular elections it has
been generally held that the returns from the election board,
when legally and properly authenticated, are not only con-
clusive upon the board of canvassing officers, but are also
*prima facie* evidence of the number of votes cast in a pro-
ceeding to contest the election; and the burden of proof is
upon the person who assails the correctness of these returns.
It has likewise been generally held that where the identical
ballots that were cast at the election have been properly pre-
served so that they can be recounted by the order of the court,
they will govern when there is a difference between them and
the returns; but it has been held, in the revision of the re-
turns or in a contest over the count as made by the canvassing
board, that while the ballots are the best evidence of the man-
ner in which the electors have voted, being silent witnesses
which can neither err nor lie, they are the best evidence only
when their integrity can be satisfactorily established. One
who relies, therefore, upon overcoming the *prima facie* cor-
rectness of the official canvass by a resort to the ballots, must
first show that the ballots as presented to the court are intact
and genuine. *Tebbe* v. *Smith*, 108 Cal. 101, 49 Am. St.

Rep. 68, 29 L. R. A. 673, 41 Pac. 454. In cases where there has been a doubt in regard to the genuineness or identity of the ballots as those that were actually cast, or in regard to the further question whether the identical ballots cast were in the same condition when presented in court as when voted at the election, the courts have been extremely careful in admitting them in evidence to overturn or contradict the result of the election as shown by the returns of the canvassing board. To preserve the prevailing force of the ballots as evidence there must be a reasonable observance of all the prescribed conditions for the safe-keeping of the ballots. It is the duty of the court so far to adhere to the substantial requirements of the law in regard to elections as to preserve them from abuses subversive of the rights of electors. And under this view the question becomes a broader one than can be disposed of by answering that in the individual case no harm resulted.

As to the controlling force of the ballots as evidence contradistinguished from the returns of the election officers, *Spidle* v. *McCracken,* 45 Kan. 356, 25 Pac. 897, holds: "That the returns of the election officers are *prima facie* evidence of what they purport to show with regard to the number of votes cast, and for whom cast, has primarily been held by this court, and has been so held by every other court to whom the question has been presented; and, in the absence of any contradictory evidence, they are conclusive. It has also been held by this court in the case of *Dorey* v. *Lynn,* 31 Kan. 758, 3 Pac. 557, and in other cases, that, whenever the ballots cast at the election can be properly identified, they are the best evidence, and much better and more reliable than a mere abstract or summary of the same made by the election officers; but whenever it has been shown that they have been wrongfully tampered with (as has been shown in the present case), they lose their controlling character as evidence, and, where there is nothing else than these discredited ballots to contradict, the returns will be held conclusive." This decision was rendered in a case where unquestionably the ballots presented were the identical ballots that had been cast; but the evidence before the court did not sustain the fact that they had been inviolably kept from the election until presented in court. On the contrary, their appearance seemed very strongly

to indicate that they had been altered and presented a different appearance when offered in court than when passed upon by the returning board.

In the case at bar the trial court ruled that the ballots presented as the rejected list in the package were not the ballots that had been voted and rejected in the count. Neither does there appear to have been clear and conclusive proof of the character and contents of the ballots that were rejected. John E. Magee, the inspector at the election, testified "these ballots are not as we left them." On being asked by the court to explain, witness, referring to a memorandum which he testified was made the night of the election, testified: "The ballots we rejected, two of them were blank, one was marked for both tickets. Five of them were marked by crosses on the extreme right hand of the ticket in the empty space, outside of the little squares, and two were marked partly in the empty space at the extreme right hand, and partly in the blank space where the names of the candidates were; while these ten ballots, which I find in this package, are marked, one blank, one for all of the candidates on both tickets, and all the rest in the small squares on the right hand." S. B. Conley, one of the clerks, testified: "There was also a string of ten rejected ballots in the package. The ballots on this string of ten ballots are not those ballots. The rejected ballots had four or five marked by crosses at the extreme outer edge of the ballots at the right-hand side. Two were blank ballots. One had all the candidates on both tickets voted for. The remaining number were some of them marked in the squares at the right hand of the ballot, and some of them were outside of the square in the empty space at the right. While these ten ballots here in this package are marked as follows: One is blank, and the remaining nine are all marked in the little square in the third space at the right of the ballot, and none are marked in the empty space like those that were rejected by the election officers." Fred G. Hughes testified: "I think the ten rejected ballots that are here are the same ten ballots that were rejected by the election board, but I am not sure. I am positive that one of them is the same. I was not an election officer." This appears to be all the testimony relative to the identity of the ballots as found in the package or the manner of marking the ones which were rejected, and

which had either been destroyed by the election judges, instead of being filed as required, or had been subsequently removed from the files and these ten substituted for them. From the testimony given by these officers of the election and bystanders, the court reasoned out the conclusion in regard to how the ten rejected ballots should have been counted; and without the ballots before him claiming to be the rejected ballots in question he ruled that seven of those ballots should be counted for the contestant and the other three counted for no one. It is not the correctness of that conclusion as based upon the testimony given that is questioned; but it is the right of the court to make any finding or arrive at any conclusion in regard to those ballots on any other evidence than the ballots themselves, and present that finding as of a sufficiently controlling character to overturn the finding already made by the election board that is resisted. The ballots were canvassed by the returning board at the close of the day of the election. They had before them the ballots that had been cast. They made their returns, in which they certified the number of votes cast for each candidate. These returns constitute the highest evidence that can be adduced in support of that fact, with the one single exception of the recount in court of the identical ballots that were cast; and the return thus made cannot be overturned or set aside upon any other evidence than upon a recount in court of the identical ballots that were thus counted by the returning board at the date of the election. If that is done, and by that count made under the direction of the court a mistaken return by the canvassing board is demonstrated, that, and that alone, is of a sufficiently controlling character to overturn the finding already made.

In *Young* v. *Deming*, 9 Utah, 204, 33 Pac. 818, the supreme court of Utah held that "the fact that such ballots, if cast for contestant, would have changed the result of the election, is not ground for disturbing the result as returned by the inspectors, in the absence of positive evidence that they were so cast." The court said it is deemed unwise to lay down any rule by which the certainty and accuracy of an election may be jeopardized by the reliance upon any proof affecting such results that is not of the most clear and conclusive character. The temptation to actual fraud and corruption on the part of the candidates and their political supporters is never so great as

when it is known precisely how many votes it will take to change the result; and men who are willing to sell their votes before election will quite as readily sell their testimony afterwards, especially as the means of detecting perjury and falsehood are not always at hand until after the wrong sought to be accomplished by it has become successful and the honest will of the people has been thwarted. In *People* v. *Sackett,* 14 Mich. 320, the court holds that the returns of the inspectors is *prima facie* evidence of the result of an election, and that where the ballots have not been preserved in the manner required by law, but have been left in an exposed condition or destroyed, the presumption that would otherwise exist of their correctness is not raised, and the court may properly be governed by the returns, unless fully convinced by proof of the integrity of the ballot. "These ballots having been improperly destroyed, and the judges not having certified that they were cast for Mr. Young, we think the evidence that these six ballots were cast for Mr. Young is insufficient to justify that finding, and that the judgment entered in favor of the plaintiff and contestant should be reversed, with costs and the case remanded for further proceedings." We agree fully with the finding of the court as above laid down, and hold that when the court was satisfied that the ten ballots that had been voted that day and that had been rejected by the election board were not before the court and in the same condition as when voted, the court could not upon any other evidence reverse or disturb the returns made by the canvassing board. And although the court might feel satisfied from the testimony of the witnesses as to how ballots marked as they describe should have been counted, it was error for the court to substitute this conclusion in the matter for the decision of the election board made when they had the ballots before them, in regard to the manner of the marking, of which there could be no mistake. It is less dangerous to lay down the doctrine that the return of the election boards should be upheld, even when the testimony of witnesses who testify from their recollection differs from these returns, than to lay down as a principle of law that the returns of our election boards, as supported by the recount of the ballots which have been regularly and legally preserved, can be overturned by the parol testimony of witnesses who would come upon the stand

weeks after the election and testify from their recollection as to the number and kind of ballots that may have been rejected and not counted by the boards to whom have been intrusted the interpretation and count of the ballots cast. The judgment is therefore reversed and the case remanded, with directions to the district court to enter judgment for the contestee.

Street, C. J., Sloan, J., and Davis, J., concur.