75 So.2d 7 (1954)
M.C. BURKE, Appellant,
v.
Thos. D. BEASLEY, one and the same person as Thomas D. Beasley, Granger E. Bruner, Lyle E. Griswold, J.B. Goff, John D. Dobbs, John A. Flournoy, H.D. Henderson, Jessie Floyd, John W. Sullivan, one and the same person as Jno. W. Sullivan, Joe Dan Trotman, H.A. Bodiford, and Emery Campbell, Appellees.
Supreme Court of Florida. Division A.
October 15, 1954.
Rehearing Denied November 1, 1954.
*8 S.M. Preacher, De Funiak Springs, and Coe & Coe, Pensacola, for appellant.
Forsyth Caro, Pensacola, for appellees.
SEBRING, Justice.
This appeal is from a final decree rendered in a primary election contest proceeding instituted pursuant to section 99.192, Florida Statutes 1951, F.S.A.
According to the record, M.C. Burke, the plaintiff below, was a candidate in the 1954 Democratic Primary election for nomination as a representative in the Florida legislature from Walton County. He sought in his complaint to have corrected an alleged error in the return of the election managers of Precinct 14 of Walton County whereby he was incorrectly deprived of 20 votes, as the result of which his sole opponent, Thomas D. Beasley, was declared to be the duly elected nominee.
Testimony was submitted to the trial court on the issues made by the complaint and answer. From the testimony the trial court found that there was some evidence that a mistake had been made in the return by the managers of the election, of whom there were eight and all of whom signed the return, but that the evidence was not of such "clear and convincing character as to overcome the prima facie validity and accuracy of the return as made by the managers whose responsibility it was to accurately count the ballots and make accurate returns thereof."
An important issue in the case was whether or not, upon this finding, the trial court should have permitted a count of the ballots cast in Precinct 14 for the purpose of impeaching the return made by the election managers. On this issue the trial court found "that the evidence fails to sustain the allegation that the integrity of the ballot boxes * * * has been preserved, both parties having at one stage of the proceeding by their pleadings, been in accord in charging that the boxes had been tampered with after delivery to the Supervisor of Registration, charges which are supported by the evidence." Predicated upon this finding the trial court ruled that the ballot boxes and ballots therein had lost their probative force and consequently could not be resorted to for the purpose of clarifying the alleged error in the return.
After this ruling had been made the question arose as to whether or not, the lack of integrity of the ballot boxes having been shown, the plaintiff should be permitted to *9 submit the oral testimony of several of the election managers for the purpose of impeaching the official return made by them. The trial court refused to allow this testimony to be received for the purpose.
On this appeal the several rulings set out above are assigned as error.
We find ample evidence in the record to sustain the decree of the trial court. While the ballots cast in an election are the primary and best evidence of the voters' will as expressed therein, it is settled that the ballots cannot be used to impeach an official return made by election managers unless the integrity of the ballots is first clearly established by the person who seeks to use the ballots for the purpose. "Where a mode of preservation is enjoined by the statute, proof must be made of a substantial compliance with the requirements of that mode. * * * the object looked to being the preservation inviolate of the ballots." State ex rel. Peacock v. Latham, 125 Fla. 779, 170 So. 469, 472. While a showing of such substantial compliance will shift to the contestee the burden of establishing that the ballots have in fact been tampered with, the rule with respect to the initial burden has been consistently applied as stated. State ex rel. Thomas v. Simpson, 134 Fla. 197, 183 So. 721; State ex rel. Millinor v. Smith, 107 Fla. 134, 144 So. 333; State ex rel. Knott v. Haskell, 72 Fla. 176, 72 So. 651.
On the question of whether or not the parol testimony of the election officers can be used to impeach their own official return the rule is generally acknowledged that "election officers will not be permitted to impeach their certificate to the returns by parol testimony." 29 C.J.S., Elections, § 276, page 398. In the case of Land v. Land, 244 Ky. 126, 50 S.W.2d 518, 520, an election contest suit, it was contended that "in entering the number of votes received by [contestee] on the certificate attached to the stub book a mistake of 10 votes was made. The clerk and other officers testified that there were only 18 votes cast for [contestee], and they filed with their evidence what purports to be an original tally sheet which sustains the verbal testimony. * * * Here, the contestant claims that since the court refused to count the ballots [by reason of tampering or doubtful integrity] * * * he should have accepted the verbal testimony supported by the tally sheet * * *. We cannot agree with appellant's contention. The result of an election cannot be shown by parol evidence of election officers or other witnesses to the count." (Emphasis supplied.) The decision upon the facts in that case was that the regularity and presumed accuracy of the officers' returns could not be overcome by such impeaching testimony. See also State ex rel. Quinn v. Lattimore, 120 N.C. 426, 26 S.E. 638, wherein it is held that election officers cannot impeach an official return by a tally sheet which was kept in a public office to which any one might have had access; and Word v. Sykes, 61 Miss. 649, which holds that testimony is inadmissible as to statements by an inspector of elections which would contradict his own return. Compare statement at 29 C.J.S., Elections, § 276, page 398: "Where the same officers have signed two contradictory returns * * * they should be permitted to explain the discrepancy." And errors in respect to non-essential portions of the return, dates, etc., may be changed or corrected. Hodges v. Murray, 240 Ky. 127, 41 S.W.2d 923.
The authorities cited in support of the rule applied in Land v. Land, supra, reflect an application of the well settled principle that parol evidence of the contents of ballots is inadmissible, the courts apparently regarding oral impeachment of the count in a return as a practical equivalent of parol testimony as to ballot contents. See Scholl v. Bell, 125 Ky. 750, 102 S.W. 248, wherein it appeared that the ballots had been tampered with and the return was proved to be a forgery; the result of the holding being the disfranchisement of the precinct since no parol proof was admissible. To the same general effect is Oakes v. Finlay, 5 Ariz. 390, 53 P. 173  a case where the *10 election officials, the canvassing board, had rejected 10 ballots, and where it appeared that the ballots had been tampered with, and the 10 rejected ballots had not been preserved inviolate, and where it was held that the testimony of the canvassing officials as to the 10 ballots actually rejected by them could not be accepted as evidence  that such testimony could not serve to impeach or alter the count on the official return even if it should appear from their testimony, as to the nature of the rejected ballots, that some of such ballots were improperly rejected and should have been counted for the contestant. The same result was reached in Savage v. Umphries, Tex.Civ.App., 118 S.W. 893, 903, the court saying: "We believe that the testimony of the witness Graham, offered by appellants to show how the commissioners' court had counted certain ballots in reaching the conclusion announced by it as to the result of the election * * * was properly excluded upon the ground that it is against sound public policy and contrary to the legislative intent that the action of the commissioners' court in counting the ballots should be impeached by the testimony of one who was present at the count as to how the duty was performed by the members of the court, and thereby show a different result than that officially ascertained and declared by them." And in Condren v. Gibbs, 94 Ark. 478, 127 S.W. 731, it is held that there can be no parol impeachment of the returns even by the voters themselves when the ballots are unavailable. 29 C.J.S., Elections, § 278, page 400.
Gray v. Huntley, 77 Colo. 478, 238 P. 53, 56, was decided upon facts similar to the case at bar. There it was held that where a member of the canvassing board had certified that the abstract of votes from the several voting precincts of Kit Carson county were true and correct and had signed the returns, such official's testimony as to alleged errors in the count of the vote was not admissible in evidence. While it may be argued that the decision is distinguishable on the pleadings from the case at bar, the opinion very ably states the necessity for caution in election contest proceedings, when such strong motivation for fraud, or at least deception, may exist after any close race between popular candidates, in which keen public interest is manifested: "The election contest statutes are not to be regarded as mere fishing licenses for contestors to ascertain the correctness or incorrectness of their statements of contest, nor only as rod and tackle for venturesome sportsmen to hold in their hands and whip an unpromising stream of adverse ballots, in the hope of landing a mess of frauds and errors for their waiting skillets."
From our study of the authorities we are convinced that the trial court ruled correctly on the issues before him and that the decree appealed from should be affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.