PATTERSON, Chief Justice, for the Court.
Pursuant to Mississippi Code Annotated section 23-5-187 (1972), Clifton Blakeney, a candidate in the November 6, 1979, election for the Smith County Board of Education, District No. 5, filed an election contest in the Circuit Court of Smith County. He alleged the County Election Commissioners’ certified results showing Ted Hawkins to be the winner by a plurality of thirteen votes arose from a material irregularity in the Warren Hill precinct ballot box evidenced by a discrepancy between the ballot count and the tally sheets. Blakeney appeals, challenging the sufficiency of the evidence to support the jury verdict upholding the results certified by the County Election Commissioners. We affirm.
The parties stipulated that only the Warren Hill box was in issue, and without it the total vote count was Blakeney, 239, and Hawkins, 232. During the trial, Obie Bryant, Clerk of the Circuit Court and Registrar of Smith County, opened the sealed Warren Hill box. The registration book inside revealed that 81 persons signed the “receipt book” for ballots to vote at Warren Hill in the election. The tally sheets inside revealed the votes cast for the candidates opposite their respective names as follows:
TALLY SHEETS
CANDIDATE NO. VOTES CAST
Hawkins 23
Blakeney 6
McCullum 33
Boykin 2
Corley 7
Craft 7
TOTAL 78
Bryant then removed the ballots from the box, separating them according to the candidates receiving the votes. This process revealed:
BALLOTS
CANDIDATE NO. VOTES CAST
Hawkins 1
Blakeney 7
McCullum 42
Boykin 2
Corley 6
Craft 8
TOTAL 66
The question thus became whether the ballots correctly reflected the legal votes cast, in which case Blakeney would be the true winner; or whether the tally sheets reflected the legal votes cast, in which event Hawkins would be the true winner.
Blakeney rested his case with Bryant’s testimony. Hawkins moved for a directed verdict, to which Blakeney’s attorney responded by saying, “It’s a question for the jury now to decide who is right and who is wrong, whether there were mistakes on the Tally Sheets or a mistake in the box.” The motion was overruled and Hawkins presented witnesses who described in detail the careful manner in which they called and tallied the ballots in accord with statute and with appropriate “checks and balances” to insure the accuracy of their counting and tallies. Each of these officials testified without contradiction that they heard candidate Hawkins’ name called numerous times although none recalled precisely how many times it was called.
No explanation has been offered by either of the parties for the discrepancy between the ballots and tally sheets although our examination reflects several “spoiled” ballots, accounting for the difference between the number of persons who signed the receipt book and the number of ballots in the box.
As a general rule, it is necessary for ballots to be authenticated before they can be introduced into evidence. This proof normally consists of evidence directed to the chain of custody, safekeeping and locking of ballot boxes, or other evidence sufficient to support a finding that the ballots are what the proponent claims them to be. However, this rule is not self-executing, and the parties here by stipulation waived this predicate to the introduction of both ballots and tally sheets.
*1037 It is apparent, we think, that a stipulation permitting ballots and tally sheets into evidence does not lend credibility or weight to that so introduced. Once the ballots and tally sheets were introduced into evidence by stipulation, the ultimate question of authenticity remained for the jury. Neither party having raised best evidence or foundation issues to bar admission of either ballots or tally sheets, the jury was left free to conclude that both could not be accurate, and that more likely than not the tally sheets meticulously prepared by disinterested poll workers immediately following the closing of the polls reflected the legal votes received.
While ballots are controlling as primary evidence where their proponent affirmatively demonstrates that the integrity of the ballot box has been maintained inviolate, see Burke v. Beasley, 75 So.2d 7, 46 A.L.R.2d 1381 (Fla.1954), where the parties stipulate into evidence what would otherwise be both primary and secondary proof, the presumption of correctness of the results certified by the election commissioners prevails, in our opinion, unless the jury finds the presumption overcome by some plausible explanation of the discrepancy. See Tebbe v. Smith, 108 Cal. 101, 41 P. 454 (1895).
In this case, the jury received no explanation for the discrepancy and therefore reasonably decided that the tally sheets accurately reflected the number of legal votes received by Hawkins and Blakeney at the Warren Hill box.
AFFIRMED.
SMITH and ROBERTSON, P. JJ. and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
LEE, J., took no part.