829 So.2d 1261 (2002)
FRED'S STORES OF TENNESSEE, INC., Appellant,
v.
Erica Louise BROWN, A Minor, By and Through her Parents, William Thomas BROWN and Tammy Marie Brown, Appellee.
No. 2001-CA-01127-COA.
Court of Appeals of Mississippi.
November 5, 2002.
*1262 James H. Colmer, Pascagoula, attorney for appellant.
Ben F. Galloway, Gulfport, attorney for Appellee.
Before McMILLIN, C.J., MYERS and CHANDLER, JJ.
McMILLIN, C.J., for the court.
¶ 1. Ten-year-old Erica Louise Brown was injured while riding a bicycle purchased from and assembled by Fred's Stores of Tennessee, Inc. Her claim was that Fred's had negligently assembled the bicycle. A county judge after a bench trial awarded $35,000 in damages. That was affirmed after Fred's appealed to circuit court. Fred's before this Court asserts that the judgment of $35,000 was not supported by the evidence. We disagree and affirm.

I.

Facts
¶ 2. On February 28, 1997, Erica Brown's parents purchased a Huffy bicycle from a store owned and operated by Fred's Stores of Tennessee, Inc. The bicycle had been assembled at Fred's. After what was said to be only a few uses of the bicycle, Erica was injured as result of the handlebars becoming loose and causing her to lose control. Erica suffered a broken leg.
¶ 3. During trial, Erica testified that in the three years since the event of her accident, she still experienced pain and discomfort. Her father testified that she has a tendency to limp and to drag her foot if she over-exerted herself. No physicians testified in person or by deposition, but there were medical records. One of Erica's doctors, Dr. Dudley Burwell, Jr., in his written report of March 1998 cautioned Erica's parents that the results of the injury created "a slight possibility of over-growth of the lateral side of the ankle," which, if it occurred to a significant degree, might require surgery. The same doctor reported five months later that Erica had no complaints during that examination, and no evidence of overgrowth had appeared. At the time of the August 2000 trial, Erica had not seen a doctor regarding her injuries since August 1998. Actual medical expenses totaled $1,121.

II.

Discussion
¶ 4. Fred's does not seek to reverse the finding of liability. Its complaint on appeal is that there was significant and compelling evidence that Erica had completely healed. What evidence of continuing problems *1263 there might have been were, in Fred's view, rather minor problems asserted by Erica and her father, and speculations from what the two non-testifying doctors might have meant with some of their medical terminology. In sum, Fred's argues that there is nothing to support a $35,000 award.
¶ 5. The argument made is divided into two parts. Firstly, Fred's states that professional testimony was needed and the case could not just be made from the records. Secondly and more generally, Fred's alleges that the $35,000 award was against the great weight of the evidence. The allegations flow into each other, and thus we consider them together.
¶ 6. Fred's actual terminology as to the records issue is that Erica failed to provide the "best evidence" of her injuries at trial. What were presented were medical records, but the doctors themselves were not called to explain any of the information. Insofar as the label of the "Best Evidence Rule" is concerned, that applies to written documents and provides that original documents should be offered at trial, absent some applicable exception. M.R.E. 1002. Our present issue does not concern whether the originals or copies of these records were offered. Still, Fred's point is clear: it is not valid to present unexplained medical records and allow the confusing medical terms to mislead the fact-finder.
¶ 7. The medical records were introduced without objection at the beginning of trial. If Fred's believed that the expert testimony in the documents might require expert explanation, the time to make the objection was then. Therefore we find that the records could be used by the trial judge, subject to a reasonable layperson's limits on what may be gleaned from such records.
¶ 8. Fred's concerns about the records focus on Dr. Burwell's references to potential but unlikely future surgery. This last entry by him, two years before trial, was that no indications had yet arisen that there would be a need for the surgery; there was "no evidence of overgrowth" at that time.
¶ 9. We find that though the physician's appearance at trial might have led to some elaboration on this point, the effect of his absence was to leave the evidence of the need for surgery because of overgrowth quite weak. If that was the only possible justification for the $35,000 award, then there would be a significant question about evidentiary support. What the unexplained records do sufficiently support is that the medical bills were because of the injury, that her injury was a broken leg, and certain other potential problems might but not likely would occur in the future.
¶ 10. Examining the evidence in the record, we determine whether the monetary damages awarded were proved to a reasonable certainty and not based merely on speculation or conjecture. Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1164 (Miss.1992). There is at times some necessary measure of speculation when a fact-finder sets an amount of damages to award. TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991 (¶ 86) (Miss.1997). In such cases, it is the plaintiff's duty to lay enough of a foundation in evidence to assist the trier of fact to make a fair and reasonable decision. Id. When a trial judge sits without a jury, an appellate court must review the record and accept all evidence that would reasonably support the judgment, together with any reasonable inferences that could be drawn from them. Yarbrough v. Camphor, 645 So.2d 867, 869 (Miss.1994).
¶ 11. There were no findings of fact entered by the trial judge. What the judge had to consider was testimony from Erica and her father, and the exhibits that included the medical reports. Erica broke *1264 her leg during the fall, and suffered the normal pain from such an incident. A year of doctors' visits and associated pain followed during the healing process. There was testimony that Erica continued to suffer pain and that she limped and dragged that foot after some exertion. The fact that she was ten years old at the time of the injury meant that any long-term effects, even if minor, would likely be long-term indeed. The age of the injured party is one of the considerations in awarding damages. Woods v. Nichols, 416 So.2d 659, 671 (Miss.1982). From Fred's perspective, of course, there was very little reliable evidence that any effects would be long-term.
¶ 12. This review of the evidence reveals that there was not much on which the trial judge could support an award for significant future effects of the injury. However, there was some evidence primarily from Erica and her father about her continuing pain and other effects. The last medical information stated that the particular future problem that slightly concerned the doctor had not appeared as yet, but there was no indication that he was now confident that the risk had passed. It is on this that the court had to base its award.
¶ 13. As to damage awards made by a jury, we affirm unless its amount "shocks the conscience" after examining the evidence in support of it. Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135 (¶ 22) (Miss.2002). A trial judge's rulings on evidence receive similar deference on appeal, and we will uphold the judgment when substantial evidence supports those findings, and we do not find them clearly erroneous. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992). Though we find that the range of acceptable damage awards based on this evidence extended much lower than $35,000 and perhaps did not extend much higher, there is sufficient evidence to affirm.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.