969 So.2d 881 (2006)
Elizabeth M. FLEMING, Appellant,
v.
Brandy M. Thomas FLOYD, Appellee.
No. 2005-CA-00042-COA.
Court of Appeals of Mississippi.
October 3, 2006.
Rehearing Denied May 8, 2007.
*882 Robert E. O'Dell, Pascagoula, attorney for appellant.
H. Benjamin Mullen, Pascagoula, attorney for appellee.
Before KING, C.J., SOUTHWICK and IRVING, JJ.
SOUTHWICK, J., for the Court.
¶ 1. Elizabeth Fleming appeals from a judgment entered after a Jackson County Circuit Court jury found in favor of Brandy Floyd regarding fault in an automobile accident. Fleming contends that the trial court erred by allowing the accident report into evidence and in refusing to find liability as a matter of law. Though not accepting that the case should have been taken from the jury, we agree that the overwhelming weight of the evidence requires a new trial. We reverse and remand.

FACTS
¶ 2. Elizabeth Fleming and Brandy Floyd were involved in a car accident in the early afternoon of November 14, 1997, in Gautier, Mississippi. Fleming lived on the south side of Old Spanish Trail, which at that location is a two-lane road running from west to east. Fleming testified that while driving her vehicle forward, she stopped at the end of her driveway and looked both ways for oncoming traffic. The view of Old Spanish Trail to her left (westerly direction) was hindered by shrubbery and also by geography. To the left, the road curved slightly behind her and climbed. There was evidence that a vehicle approaching from the west cannot be seen until it is a distance of about two hundred feet from the end of the driveway. Fleming said she did not see any vehicles when she made one last look to the left and then drove out onto the street to cross over the eastbound lane and turned left to go to the west. There was some evidence that the point of impact was at about the moment that she completed her turn onto the westbound lane of Old Spanish Trail.
¶ 3. The oncoming driver, Floyd, testified that she saw Fleming stopped at the *883 end of her driveway and looking away from Floyd to the east. Floyd said that she maintained her course, thinking Fleming had seen her and would remain stopped until she passed. Floyd testified that Fleming pulled onto the road without looking back her direction, causing Floyd to slam on her brakes. Floyd did not know what her speed was before she started to brake. The speed limit is thirty miles per hour in that location. A skid mark of about ninety-four feet was made by Floyd's vehicle. The left front of Floyd's vehicle struck the left side of Fleming's.
¶ 4. At trial, Fleming called Jim Bowman as an expert in accident reconstruction. Bowman is a former police officer who had worked as a trial consultant for eighteen years. He testified that his investigation and subsequent calculations convinced him that Floyd was going at least forty-seven miles per hour when she began to skid and seventeen miles per hour at the point of impact. He determined that Fleming was traveling around four miles per hour at the time of impact. Bowman's opinion was that because of the obstructions in the line of sight and the speed of each vehicle, Fleming could not have seen Floyd before Fleming exited her driveway. Floyd had no expert to refute these calculations.
¶ 5. Neither driver complained of serious, immediate injuries. Fleming alleged that the accident exacerbated existing carpal tunnel syndrome in her wrists, caused injuries to her feet, and re-aggravated a pre-existing back injury. She claimed medical expenses of approximately $7,500 and damage to her car totaling $3,000. Fleming was treated and released the day following the accident by her family physician. She later saw an orthopedist due to the pain in her arms, neck, and feet. The orthopedist had previously treated Fleming for a broken foot in an unrelated incident.
¶ 6. Following a two-day trial in November 2004, the jury returned a unanimous verdict in favor of the defendant Floyd. Fleming appeals.

DISCUSSION
1: Admissibility of opinion evidence in accident report
¶ 7. At the beginning of trial, several agreed exhibits were introduced into evidence. Among them was a form entitled "Mississippi Uniform Accident Report." Some of the information on the form was easily understood, such as the names and basic information about the individuals involved and their vehicles. The largest blank space on the form was used by the officer to draw and label the driveway and the street; he did not draw the locations of the vehicles. In quite abbreviated fashion, a summary of each driver's explanation of the incident was handwritten by the officer.
¶ 8. Those parts of the form are not contested here. The arguments center on blocks in which the investigator listed different details of the investigation by using a code. Nothing on the exhibit indicated what information was to be put into each numbered block, or what the numbers used by the officer meant. To the average juror, this part of the document was unintelligible. A witness was allowed to explain, however. Whether he should have been allowed to do so is our first issue.
¶ 9. The accident report was prepared by Don Jones, a Gautier policeman who investigated the accident. There is no evidence that Jones was unavailable as a witness, but neither party called him. Testimony regarding the report came through Jim Bowman, the plaintiff Fleming's accident reconstruction expert. Both on direct *884 examination by the plaintiff's attorney and on cross-examination, Bowman testified about some of the coded information.
¶ 10. In his direct testimony, Bowman was asked to explain the methods he used to reach his conclusions. Bowman recounted his actions and analysis in several pages of transcribed testimony without being distracted by questions from the attorney. Bowman testified that on the accident report Jones had indicated that he believed the defendant Floyd's brakes were defective. The only record of the conclusion about Floyd's brakes was in one of the coded blocks on the form. Bowman believed Jones to be mistaken about the brakes. Bowman was of the opinion that Floyd's excessive speed was the sole cause of the accident and no fault could be attributed to Fleming.
¶ 11. During his cross-examination of Bowman, counsel for the defendant Floyd asked Bowman about two other codes on the police report:
[Defense attorney]: And you also notice on [the accident report] the section where it says "contributing circumstances"?
[Bowman]: Right.
[Plaintiff's attorney]: I object, your honor.
[Defense attorney]: It's already in, he's testified about it.
BY THE COURT: Your objection based on?
[Plaintiff's attorney]: My objection, Your Honor, is with where he's going with this. He's trying to get opinion evidence of the police officer into evidence. It's not admissible unless the police officer were here to sponsor it.
BY THE COURT: Well, that document has been admitted by stipulation. Overruled.
¶ 12. It appears that the trial court analyzed the issue as one of waiver due to the parties' agreement to introduce the document. From the trial judge's perspective, once a document was admitted without either side's retaining an objection, anything on the document could be explained.
¶ 13. What was then explained by the expert was that the investigating police officer had used a numbered code in one block to indicate that the defendant Floyd had engaged in "no improper driving." Equally importantly, the officer had through a coded entry indicated that as to the plaintiff Fleming there had been a "failure to yield right-of-way."
¶ 14. At least two issues are presented by Fleming's challenge to the admissibility of these conclusions by investigating policeman Jones, admitted over objection through the plaintiff's expert witness. One is whether both parties' pre-trial agreement to admit this document would permit such testimony as was needed to decode its information. The second is whether the expert's testimony on direct as to at least one of the codes waived any objection when the opposing counsel asked about other hidden information.
¶ 15. We examine the document generically. It was an official report prepared by the appropriate governmental authority on the event at issue in the litigation. The parties' agreement removed authenticity issues. Such a document would have been admissible under an exception to the prohibitions on use of hearsay evidence. M.R.E. 803(8). The availability of the person preparing the document, police officer Jones, was immaterial to admission. M.R.E. 803. What is admissible as a public record are the "factual findings resulting from an investigation" but not the opinions and conclusions that are contained in the report. M.R.E. 803(8) & *885 M.R.E. 803(8) cmt. The officer's coded conclusions in the report that one driver complied with the law and the other failed to yield would have been excluded if the only doorway for admission was Rule 803(8) itself.
¶ 16. Of course, the doorway used here for admitting the document was the pretrial agreement of the parties. The defendant Floyd alleges that when parties stipulate to evidence, any objection that the evidence may elicit is waived. One precedent cited to us concerned an election contest. Blakeney v. Hawkins, 384 So.2d 1035, 1036 (Miss.1980). The parties' stipulation to the admission of the evidence was found to be sufficient to waive the usual authentication requirements. A "presumption of correctness" of the election outcome as certified by the election commissioners existed "unless the jury finds the presumption overcome by some plausible explanation. . . ." Id. at 1037. This precedent allows the issues of authenticity to be bypassed by agreement. But authenticity is not our issue. Also not our issue is a late-discovered challenge to relevance of some documents when the parties have agreed to admission of a batch of records. Meena v. Wilburn, 603 So.2d 866, 871 (Miss.1992).
¶ 17. Even though the hearsay exception for public records categorically excludes opinions, an exception without that exclusion was available. Police reports are also admissible as business records. Copeland v. City of Jackson, 548 So.2d 970, 975 (Miss.1989) (discussing M.R.E. 803(6)). Admissibility does not depend on a distinction between facts and conclusions; the fault line is elsewhere. It has been held that "a police report which contained information obtained from a bystander was inadmissible; the officer qualified as one acting in the regular course of a business, but the informant did not." Fisher v. State, 690 So.2d 268, 273 (Miss.1996) (quoting Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930)). The information must be based on the knowledge of the officer who prepared the record:
In holding such report admissible we should not be understood as holding all the contents of the report were necessarily admissible. For example, there may be notations in such a report which are recitations of statements of others, and would be inadmissible even though the officer were present in court testifying. The report is simply a substitute for the officer appearing in person and testifying.
Copeland, 548 So.2d at 975-76.
¶ 18. Despite these precedents, the business record exception is not an unfettered right to admit all information contained within a police report except for hearsay statements from witnesses. An opinion in the report is admissible "so long as `the conclusion is based on a factual investigation and satisfies the Rule's trust-worthiness requirement.'" Jones v. State, 918 So.2d 1220, 1231 (Miss.2005) (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)). In Beech, the United States Supreme Court held that an investigatory report by a U.S. Navy judge advocate concerning an airplane crash could not be excluded just because the report stated an opinion as to the cause of the crash. The Supreme Court noted that a lay witness is permitted to testify by "opinion or inferences" based on observations if helpful to the trier of fact. The fact that the evidence is an opinion would not categorically exclude it, but it should not be admitted if it is unreliable.
¶ 19. Applying these principles, we affirmed a trial court that excluded the report of a county forester from evidence. Redhead v. Entergy Miss. Inc., 828 So.2d *886 801, 809 (Miss.Ct.App.2001). The report contained the forester's conclusion that trees had caught fire from contact with a power line running above the trees. Since the forester was not qualified to offer such an opinion, the statement was not trustworthy.
¶ 20. Quite similarly, before an alleged expert on accident reconstruction may be permitted to testify, the qualifications of that witness must be supported by evidence of actual expertise. A law enforcement officer may not have sufficient expertise even when having substantial experience in preparing reports on accidents. Fielder v. Magnolia Bev. Co., 757 So.2d 925, 937-38 (Miss.1999) first appeal concluded that law enforcement witness at original trial was not qualified. Id. at 927 (citing Fielder v. Magnolia Bev. Co., 667 So.2d 640 (Miss.Ct.App.1995) (mem)). A police officer who is not qualified as an expert in accident reconstruction should not be allowed to state opinions on causation or fault in an accident. Id.; Thompson v. Lee County, 925 So.2d 57, 67 n. 7 (Miss.2006) (citing Roberts v. Grafe Auto Co., 701 So.2d 1093, 1098-99 (Miss.1997)). In Thompson, Roberts and the first Fielder trial the officers testified. The fact that here the opinion is in a business record does not insulate that opinion from the same rules.
¶ 21. Though police officer Jones's report was a business record, there was no evidence that Jones was qualified to give an opinion on causation. Thus, Jones's opinions were not admissible as a business record. Had Jones's opinions appeared fully explained without the barrier of a code, the parties' agreement to the admission of the document that clearly revealed those opinions would have waived any objection to the opinions. On this document, though, there was a veil over the opinions, a veil that could be lifted only by new evidence. The jury as trier of fact needed either an expert or a written explanation of the codes to understand these parts of the document.
¶ 22. We find nothing in the evidentiary rules and little precedent to explain whether parties have agreed to the admissibility of expert explanations when they agree to admission of evidence that needs some explaining. We once considered an appeal in which the principal evidence to support the lower court could only be found in technical medical records. Fred's Stores v. Brown, 829 So.2d 1261, 1263 (Miss.Ct.App. 2002). The records had been introduced by consent at the beginning of trial but no expert ever explained them. They contained medical opinions concerning the possible need for later surgery. The defendant belatedly argued that medical records should not be presented to the jury without expert explanation. Id. The jury could read the conclusions of the doctors and likely used them to some extent even if not fully understanding them. Chief Judge Roger McMillin for this Court rejected that expert testimony was a sine qua non for admission of the records:
The medical records were introduced without objection at the beginning of trial. To the extent expert testimony appeared in the documents that might require expert explanation, that was the time to make the objection. Therefore we find that the records could be used by the trial judge [as the fact-finder], subject to a reasonable layperson's limits on what may be gleaned from such records.
Id. Scientific or technical evidence usually should not be presented without explanation since it might mislead. However, a failure to explain the accident report in the present case would not have misled since the expertise needed was to explain otherwise meaningless codes.
*887 ¶ 23. We conclude that the effect of the parties' consent to admitting this accident report was more limited than the trial court ruled. Certainly such evidence as could be understood without scientific or technical knowledge was effectively in front of the jury when the document was admitted. Having a witness testify from that same level of understanding about the document does not go beyond the reach of the agreed admission of the document. The introduction of expert testimony, though, or offering another document explaining the codes, creates additional usable evidence that was not before the average juror simply from the stipulated document. Consenting to admit the report does not consent to allowing new evidence in the form of technical or scientific proof.
¶ 24. Deciding that the stipulated admission did not permit the expert testimony does not end the analysis, though. The report was first discussed by the plaintiff Fleming's own expert, Jim Bowman. In his narrative explanation of his methods and conclusions, he presented evidence from the coded entries. It is true that the plaintiff's attorney did not specifically ask the witness for coded information, but the witness was asked without counsel's imposing limits to explain how different pieces of evidence  including the accident report  allowed him to conclude that the accident was solely the fault of the defendant Floyd.
¶ 25. Experts are subject to cross-examination concerning the basis of their conclusions. Hollingsworth v. Bovaird Supply Co., 465 So.2d 311, 315 (Miss. 1985). The scope of cross-examination is not limited to the specific subject matter of the direct examination. M.R.E. 611(b). Bowman had been qualified as an expert for accident reconstruction. His testimony concerning the accident report and some of the coded information "opened the door" for the defense to pursue that line of questioning further. Cooper Tire & Rubber Co. v. Tuckier, 826 So.2d 679, 687 (Miss. 2002). Since the plaintiff's attorney elicited expert testimony from his own witness about coded information on this report, he waived any objection to defense counsel's pursuing explanation of other codes.
¶ 26. The plaintiff Fleming makes some effort to argue that this testimony invaded the province of the jury because it was evidence of the ultimate issue of fault and denied her due process. Expert testimony is not barred simply because it "embraces an ultimate issue to be decided by a trier of fact." M.R.E. 704. The due process allegations do not merit analysis. The evidence of the investigating officer's opinion about the roles of each party to the accident was admissible.
¶ 27. We now turn to whether all the evidence, including these opinions, supports the verdict and resulting judgment.
2: Sufficiency of the evidence
¶ 28. Fleming argues that the trial court erred in denying her motion for directed verdict and later for a judgment notwithstanding the verdict. It appears that Fleming never moved for a directed verdict, but she did request a peremptory instruction and a JNOV. The same review standard is applied on appeal to the denial of any motion which challenged the legal sufficiency of the evidence. White v. Yellow Freight System, Inc., 905 So.2d 506, 510 (Miss.2004); Wilner v. Mississippi Export R.R. Co., 546 So.2d 678, 681 (Miss. 1989). We consider all evidence including inferences in a manner that supports the verdict. In determining if the evidence is sufficient, the inquiry is whether the evidence favors the moving party, Fleming, to such an extent that reasonable and fairminded *888 jurors could not have reached a contrary conclusion. Id.
¶ 29. The evidence that Fleming finds so compelling concerns Floyd's speed. The only witness who analyzed the physical evidence available after the accident was the plaintiff's expert Bowman. He testified that Floyd was speeding, and that with such close margins between the occurrence and the avoidance of this accident, the speed was the sole proximate cause of the collision. The defendant Floyd provided no expert of her own. She simply testified that she was not driving as fast as Bowman calculated. Floyd said she saw Fleming looking in the opposite direction immediately before Fleming pulled out. Conversely, Fleming testified she looked to her left just before pulling onto Old Spanish Trail and was habitually extra-cautious about entering that street.
¶ 30. Fleming's expert Bowman examined the skid marks and made various assumptions to cause him to calculate that Floyd was driving at least forty-seven miles an hour in this thirty mile per hour zone. Bowman also believed that it was impossible for plaintiff Fleming to have seen Floyd in time to avoid pulling out due to Floyd's excessive rate of speed.
¶ 31. There are statutes and precedents on which the defendant Floyd relies to find Fleming at fault, including that she had a duty to yield the right-of-way. E.g., Miss. Code Ann. §§ 63-3-805 & 807 (Rev.2002); Stribling v. Hauerkamp, 771 So.2d 415, 416 (Miss.Ct.App.2000). We find the statutes and precedents to structure the analysis but not to force the result that Floyd seeks.
¶ 32. Vehicular accidents are among the banes of modern society and appellate opinions have frequently addressed issues that arise. We find little purpose in examining the myriad variations in precedents cited to us. The investigating officer's report that was the subject of the first appellate issue concluded that Floyd had committed no violation. Though the evidence exonerating Floyd from having any fault in this accident was weak, there was at least some evidence on which jurors might rely. We do not find that as a matter of law Floyd had to be at fault.
3: Weight of the evidence
¶ 33. The plaintiff also unsuccessfully moved for a new trial. We review alleged error in refusing a new trial by accepting the evidence that supports the verdict as true. Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135, 1143 (Miss.2002). If the appellate court after making that review has the firm belief that the verdict is so contrary to the overwhelming weight of the evidence as to constitute an "unconscionable injustice," then a new trial should be ordered. Id.
¶ 34. We have already discussed much of the evidence. The investigating officer's report that exonerated Floyd was admitted. Admissibility and weight are different issues, though. There is no evidence of what the investigator did before reaching that conclusion. When the investigating officer was preparing his report soon after the incident, Floyd did not admit to speeding. Fleming may not have had any idea of what Floyd's speed might have been. Based on the evidence before him soon after the accident, with no one alleging that Floyd was speeding, the investigating officer may have had little on which to base a conclusion about anyone's speed.
¶ 35. In addition to the opinions of the accident reconstruction witness and of the investigating officer, the jurors had photographs and measurements of the scene. This evidence revealed with some clarity that the margin of safety was quite narrow *889 on this stretch of road. The only evidence was that because of the hill, curve, and shrubbery, a vehicle proceeding from the west towards the Fleming driveway did not appear to someone at the driveway until 200 feet away. Every second and partial second counted. At forty-seven miles per hour, which is the only substantial evidence as to speed, a vehicle would travel about sixty-nine feet per second. Once Floyd first came into Fleming's view, had Floyd not begun to slow, she would have closed the gap in three seconds. Floyd's skid marks covered the last ninety-four feet before the collision, which means that the brakes were applied with about half of the 200 feet remaining. Floyd's vehicle was still moving at seventeen miles per hour when it collided with Fleming's. According to Bowman, the stopping distance of Floyd's vehicle had it been proceeding at only 30 miles per hour would have been forty-three feet. There was no evidence to contradict that a ninety-four foot skid, which would have been even longer if not for the collision, required a finding that Floyd was exceeding the speed limit when she began to brake. Had the defendant Floyd been able to dispute that evidence with reliable expert testimony admissible under Rule of Evidence 702, there would have been a substantial jury question.
¶ 36. One party's violation of a traffic regulation and consequent negligence per se do not equate to fault. The violation must have been a proximate cause of the accident. Clark v. Clark, 863 So.2d 1027, 1032 (Miss.Ct.App.2004). Here, though, the overwhelming weight of evidence required a finding by the jury that any significant speeding would have been one proximate cause of the accident. Speeding decreased the reaction time with negligent haste. The investigating officer's opinion that the defendant Floyd had committed no traffic violation was introduced because of the waiver of the objection by the plaintiff to that evidence. To the jury, likely that investigating officer's report had the aura of impartiality. Unfortunately, there is no evidence that it had the content of reliability. Before the officer would have been allowed to testify to these opinions, he would have had his training and methods examined and a decision made on his qualifications. None of that occurred here. We do not know what the officer used to conclude that one party complied and the other breached traffic rules. The jurors had no evidence on which to validate that opinion either.
¶ 37. Jurors are entrusted with credibility decisions; they likely decided the police officer made an honest report of belief. However, the unusual reasons which made the opinion admissible did not add gold to its weight nor a blue ribbon to its accuracy. The officer's opinion, once admitted, was entitled to be given the weight that it deserved. Meridian Hatcheries, Inc. v. Troutman, 230 Miss. 493, 505, 93 So.2d 472, 474 (1957) (evidence admitted due to waiver of objection should be given "its natural probative effect.") This unverified opinion was not entitled to much weight in comparison to the opinion of a witness, qualified at trial as an expert, that Floyd was speeding.
¶ 38. A jury verdict will be sustained when there are differing credible versions of the facts and no physical evidence makes one version of the events implausible. Redmond v. Breakfield, 840 So.2d 828, 831 (Miss.Ct.App.2003). The investigating officer concluded that the plaintiff Fleming had failed to yield the right of way. It could well be that Fleming did not look back one last time to her left. With only seconds between the time that a vehicle driving from the left would first be seen until it reached the driveway, *890 Fleming's failure to make her last look to the left before pulling onto the street would easily have put both drivers in a position of danger. There may even be some aspect of the now-abandoned defense of "last-clear-chance" in the jury verdict. If the jury perceived Fleming as the person whose failure to enter the roadway with care made a collision with the speeding Floyd unavoidable, perhaps it concluded that she was responsible. Mississippi long ago adopted comparative negligence principles. Such doctrines as last clear chance do not bar recovery but are items of negligence in the overall allocation of fault. Horton v. American Tobacco Co., 667 So.2d 1289, 1293 (Miss.1995). The jury finding that Fleming had some fault is sustainable.
¶ 39. The evidence that Floyd was also at fault is overwhelming. The speed at which the only reliable evidence indicates Floyd was traveling afforded both drivers less time to avoid the collision. All entities who negligently contribute to an injury should be allocated some fault. Dawson v. Townsend & Sons, Inc., 735 So.2d 1131, 1134 (Miss.Ct.App.1999). The jury's assessment of fault solely to Fleming is implausible based on the physical evidence. More importantly, the verdict was against the overwhelming weight of the credible evidence.
¶ 40. A new trial should have been granted. We are not, though, holding that the only outcome of a new trial is the allocation of fault to both parties:
Ordinarily this court does not disturb the finding of fact by a jury, nor review such finding except to determine whether or not there is sufficient evidence, if believed by the jury, to support the verdict. . . . However, an exception to this rule may arise in exceedingly rare cases where, from the whole circumstances, the testimony is contradictory and unreasonable, and so highly improbable that the truth of it becomes so extremely doubtful that it is repulsive to the reasoning of the ordinary mind. In such a case we think it proper to award a new trial on the facts, and let another jury have an opportunity to weigh and judge the testimony at another time, and under different circumstances.
Thomas v. State, 129 Miss. 332, 92 So. 225, 226 (1922) (quoted in Edwards v. State, 736 So.2d 475, 485 (Miss.Ct.App.1999)). Reversing due to deficiencies in the weight of evidence is not the functional equivalent of directing a verdict for the new trial. If a second trial has the same outcome as the first, such a jury reconfirmation would suggest that the judicial scales used to test for overwhelming weight in this record need to be recalibrated. "If the exact evidence and no more is admitted again, the fact that a different jury looking at the same proof reaches the same conclusion means that a second reversal would not necessarily be appropriate in the interests of justice." Edwards, 736 So.2d at 484 (citing Tibbs v. Florida, 457 U.S. 31, 43 n. 18, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)).
¶ 41. We reverse and remand for a new trial.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.