# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01196-COA

ROBERT McKAY                                                                     APPELLANT

v.

CHOCTAW COUNTY, MISSISSIPPI, THROUGH                              APPELLEE
THE CHOCTAW COUNTY BOARD OF
SUPERVISORS

DATE OF JUDGMENT:               05/29/2019
TRIAL JUDGE:                    HON. ROBERT WILLIAM ELLIOTT
COURT FROM WHICH APPEALED:      CHOCTAW COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        ROBERT G. GERMANY
                                WILLIAM RUFUS WHEELER JR.
                                JAMES ROGER FRANKS JR.
ATTORNEYS FOR APPELLEE:         DANIEL JUDSON GRIFFITH
                                ARNULFO URSUA LUCIANO
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    AFFIRMED - 02/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Robert McKay filed a complaint against Choctaw County under the Mississippi Tort

Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2019), seeking to recover

damages for serious injuries he sustained in a three-car wreck involving Choctaw County

Deputy Sheriff Barry Miller.  After a bench trial, the trial judge found that the MTCA's

police-protection immunity barred McKay's claim because Deputy Miller had not "acted in

reckless disregard of the safety and well-being of any person not engaged in criminal

activity."  *Id.* § 11-46-9(1)(c).  On appeal, McKay argues that the trial judge erred by

admitting the Uniform Crash Report of a Mississippi Highway Patrol trooper who investigated the wreck and related testimony by the trooper. McKay also argues that the trial judge erred by finding that Miller did not act in reckless disregard of the safety and well-being of others. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 24, 2014, Deputy Barry Miller was in his patrol car on his way back to the Choctaw County Sheriff's Department. He heard over the radio that there was a medical emergency at French Camp Academy and decided to respond. Dispatch did not specifically request that Miller respond, but he thought he could be of assistance. Miller was on Highway 9, about two miles outside of Ackerman, when he heard the emergency dispatch. He turned on his blue lights but did not turn on his sirens because he did not see any other traffic at the time. From Highway 9, Miller turned west onto Highway 12 and increased his speed to 65 miles per hour.

¶3. As Miller topped a hill near Fentress, he saw a large truck carrying wood chips pull onto Highway 12 westbound, the same direction Miller was driving. Miller testified that he turned on his siren when the chip truck pulled onto the highway. He slowed down and eased into the eastbound lane to see if he could pass the truck. He could not see completely in front of the truck, but the eastbound lane was open, so Miller moved to pass. When he pulled into the eastbound lane, Miller saw a white sedan in front of the truck in the westbound lane. The truck and the sedan both slowed and moved toward the shoulder as Miller passed. Miller

2

testified that he had been driving approximately 65 miles per hour but that he slowed as he was passing the truck and the sedan.

¶4.     Miller noticed that three eastbound cars approaching him were all slowing down and moving toward the shoulder. McKay's car was the first of the three cars. Miller estimated that he was about 150 yards from those cars as he was passing the white sedan. Miller moved back into the westbound lane after passing the white sedan. Around this time, Miller also saw a pickup truck approaching Highway 12 from the north on Bowie Maddox Road. Miller was approximately 50 yards from the intersection of Highway 12 and Bowie Maddox Road (a T intersection) when the pickup truck came to a complete stop. Miller did not see the pickup truck pull out until the moment of impact. The pickup truck suddenly pulled onto Highway 12 and struck the front passenger side of Miller's vehicle. The impact pushed Miller's patrol car into McKay's vehicle, which was stopped in the eastbound lane.

¶5.     Brad Tomlinson was driving the chip truck that Miller passed. He testified that when he noticed Miller's blue lights behind him, he thought he was being pulled over, so he slowed down to find a place to safely stop on the side of the road. As he slowed, Miller drove past him in the eastbound lane. Tomlinson did not recall hearing a siren.

¶6.     Charlotte Moore was driving the white sedan in front of the chip truck. She testified that Miller was driving fast and that she had to pull off the road to avoid him. She called the sheriff's office to complain that a deputy had run her off the road. Moore testified that she saw Miller's blue lights but did not remember hearing a siren.

3

¶7.    Debbie Pickle and her husband were driving east on Highway 12. As they approached Bowie Maddox Road, a pickup truck was stopped on Bowie Maddox Road. Pickle saw the pickup truck start to pull onto the highway and commented, "White truck, do not pull out." But the pickup truck did pull out and almost immediately collided with a car (Miller's car) in the westbound lane. Pickle then watched as Miller's car collided with a car stopped in the eastbound lane (McKay's car). Pickle did not see any lights or hear any sirens, and she did not know there was a patrol car involved until after the collision.

¶8.    Ralph Bowie was driving the pickup truck. Bowie, who was 82 years old at the time, was on his way to meet some friends for coffee. As he approached Highway 12 on Bowie Maddox Road, he saw a car stopped in the eastbound lane of Highway 12. Bowie thought that the driver might be waiting to turn left onto Bowie Maddox Road, which Bowie was then occupying. Bowie testified that Bowie Maddox Road was not very wide. Bowie started to pull out to turn left onto Highway 12 so that the other driver could turn into Bowie Maddox Road. Bowie said that he looked both ways before he pulled out. He testified that he saw a car and a truck to his left in the westbound lane but thought he had plenty of time to pull out. He testified that he did not see any lights and did not hear a siren. He testified that he never saw Miller's patrol car until the impact.

¶9.    McKay was driving east on Highway 12 on his way home from work. About five miles west of Bowie Maddox Road, he saw an ambulance and a law enforcement vehicle approaching with their lights and sirens on. McKay started to pull over when he saw them,

4

but they turned off the highway toward French Camp, and McKay continued east on Highway 12. As McKay approached Bowie Maddox Road, he saw more blue lights headed in his direction. McKay said the lights were approximately a quarter of a mile away. McKay did not hear a siren. He started to pull onto the shoulder as much as he could, but suddenly Miller's vehicle collided with his car. McKay testified that he never saw Bowie's pickup truck to his left, nor did he see the collision between Bowie and Miller. McKay sustained serious injuries in the wreck.

¶10. Ben and Eric Chambers were working in a field about a quarter of a mile from the wreck. They heard the wreck but did not see it. When they got to the scene, Ben approached Miller's vehicle, and Miller told him, "I had my lights and sirens on." Ben did not remember seeing blue lights or sirens at the time. Eric testified that he saw a deputy's vehicle driving on Highway 12 with its blue lights on before the crash. He did not hear a siren.

¶11. Matthew Henson, a trained accident reconstructionist with the Mississippi Highway Patrol, responded to the scene and prepared a Uniform Crash Report (UCR). When the County offered the UCR into evidence, McKay objected to "certain portions" of the UCR, i.e., "anything dealing with causation." McKay's attorney argued that those specific parts of the UCR were hearsay and that Henson had not been designated as an expert witness. McKay's attorney acknowledged that "most of the [UCR]" was admissible, but he objected "to any opinions" in it, including the narrative portion describing the wreck. He also stated that it was not necessary to redact the document since the trial was a bench trial. The trial

judge stated that accident reports generally are admissible but that he would determine the relevance and admissibility of the information in the report.

¶12. Henson testified that the day was clear and bright and that there were no visual obstructions near the scene of the crash. Henson had prepared a drawing of the collision "based on the highway structure and intersecting streets" at the wreck's location. The report also contained a narrative of the wreck, which stated:

> [Miller] was traveling west on MS 12. [Bowie] was traveling south on Bowie Maddox Road attempting to turn left on MS 12 and travel east. [McKay] was traveling east on MS 12. The front of [Bowie's truck] struck the right side of [Miller's car], forcing [Miller] into the east bound lane. The front of [Miller's car] then collided with the front of [McKay's car]. [Miller] came to an uncontrolled final rest facing west in the eastbound lane of MS 12. [Bowie] came to a controlled final rest facing south on Bowie Maddox Road. [McKay] came to an uncontrolled final rest off the south side of MS 12 facing southwest.

Henson also noted that Miller was responding to a call and had activated his blue lights and siren.[1]

¶13. Henson testified that the narrative was based on the drivers' statements, witness statements, physical evidence, and the location of the vehicles. Henson did not make any measurements or field notes. He did not attempt to reconstruct the accident, although he has extensive training in accident reconstruction. Henson testified that he only spoke briefly to McKay and Miller because both were injured and medical personnel were attending to them.

---

[1] As described above, Miller stated that he had turned on his siren, but no other witness recalled hearing Miller's siren.

He did speak to Bowie and noticed no obvious impairment. Henson indicated in his report that Bowie had failed to yield the right of way.

¶14. After the trial, the judge entered an opinion and order finding that Miller was within the scope and course of his employment and was engaged in "police protection" activities at the time of the wreck. The judge also found that McKay failed to prove that Miller acted in reckless disregard of the safety of others. Thus, the judge entered a final judgment in favor of the County on the ground that it was immune from liability under the MTCA. Miss. Code Ann. § 11-46-9(1)(c).

¶15. McKay filed a motion for a new trial, which was denied, and a notice of appeal. On appeal, McKay argues that the trial judge erred by admitting Henson's testimony and the UCR to the extent that the testimony and UCR reflect Henson's opinions regarding fault or causation. McKay also argues that the trial judge erred by finding that Miller did not act with reckless disregard.

## ANALYSIS

### I. The trial judge did not abuse his discretion by admitting the UCR or Henson's testimony.

¶16. McKay argues that it was error to allow Henson to testify about his opinions regarding fault because Henson was not designated as an expert witness. McKay objected to both Henson's testimony regarding fault and the portions of the UCR that reflected Henson's opinions. The judge admitted the UCR into evidence but stated that he would determine later what information in the report was relevant and admissible.

7

¶17. We review the admission or suppression of evidence for an abuse of discretion. *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2004). A police report may be admissible under the hearsay exception in Mississippi Rule of Evidence 803(8) if the report is "based on a factual investigation and it satisfies the Rule's trustworthiness requirement." *Rebelwood Apartments LP v. English*, 48 So. 3d 483, 493 (¶42) (Miss. 2010) (quoting *Fleming v. Floyd*, 969 So. 2d 881, 885 (¶18) (Miss. Ct. App. 2006), *rev'd on other grounds*, 969 So. 2d 868 (Miss. 2007)). However, we have held that a law enforcement officer who was not present at the time and place of a crash generally cannot give opinion testimony on the cause of the crash unless he has been qualified as an expert in accident reconstruction pursuant to Mississippi Rule of Evidence 702. *Mitchell v. Barnes*, 96 So. 3d 771, 779-80 (¶¶29-32) (Miss. Ct. App. 2012). We have also held that the admission of an accident report containing such (otherwise inadmissible) opinions would improperly "circumvent" the requirements of Rule 702. *Id.* at 780 (¶33); *accord Murray v. Gray*, No. 2018-CA-01550-COA, 2020 WL 4436712, at *7-9 (¶¶28-34) (Miss. Ct. App. June 30, 2020), *cert. granted* (Miss. Feb. 4, 2021).

¶18. In *Rhoda v. Weathers*, 87 So. 3d 1067 (Miss. Ct. App. 2011), *rev'd in part on other grounds*, 87 So. 3d 1036 (Miss. 2012), this Court held that a trial court did not abuse its discretion by excluding a UCR on the basis that the officer's "investigation was insufficient to reach a trustworthy conclusion as to fault in causing the accident." *Id.* at 1069-70 (¶11) (citing *Rebelwood*, 48 So. 3d at 491 (¶36); M.R.E. 803(8)). In *Rhoda*, the officer "had some

8

training in accident reconstruction" but "did not do a reconstruction for [the] accident" at issue. *Id.* at 1070 (¶14). The officer in *Rhoda* simply considered witnesses' conflicting accounts of the cause of the crash and made "a credibility determination" based on the same evidence presented to the jury. *Id.* at (¶15). The trial court excluded the report after concluding that the officer's "investigation was insufficient to reach a trustworthy conclusion as to fault." *Id.* at (¶11). We held that the trial court did not abuse its discretion by excluding the officer's opinions and conclusions. *Id.* at (¶15).

¶19.    In *Mitchell*, a police officer who was neither present at a wreck nor qualified as an expert in accident reconstruction gave opinion testimony regarding the speed of a motorcycle involved in the wreck and the cause of the wreck. *Mitchell*, 96 So. 3d at 778-79 (¶¶28-29). In addition, the trial court admitted into evidence an accident report that included the officer's opinions and a diagram that the officer drew that supposedly depicted the wreck. *Id.* at 779-80 (¶¶31, 33). On appeal, this Court held that the trial court abused its discretion in allowing the testimony because the officer was not properly qualified under Rule 702. *Id.* at (¶32). We also held that the trial court abused its discretion by admitting the accident report because the admission of the officer's opinions through the UCR improperly "circumvent[ed]" the requirements of Rule 702. *Id.* at 780 (¶33); *accord Murray*, 2020 WL 4436712, at *7-9 (¶¶28-34).

¶20.    Citing *Rhoda* and *Mitchell*, McKay argues that parts of Henson's testimony and parts of the UCR should have been excluded. We disagree. Although Henson was not designated

9

as an expert in accident reconstruction[2] and conducted only a limited investigation, his testimony and report do not include any improper expert opinions or credibility determinations. The diagram and the narrative in the UCR simply reflect undisputed facts related to the wreck, i.e., that Bowie pulled out onto Highway 12 and struck the side of Miller's car, which caused Miller's car to collide with McKay's vehicle. Henson did not need to be designated as an expert to testify to these undisputed facts. Moreover, Henson readily admitted that he did not perform an accident reconstruction and could not say how fast Miller was driving at the time of the wreck, and he did not attempt to offer any expert testimony on those subjects.

¶21. Nor did Henson or the UCR improperly opine on issues of fault. McKay's primary concern at trial seemed to be that in the sections of the UCR identifying "Contributing Circumstances," Henson checked a box indicating "No Apparent Improper Driving" for Miller but checked a box indicating "Failed to Yield Right of Way" for Bowie. However, as to Miller, this is consistent with Henson's testimony that he had no way to know how fast Miller was driving. It is not an expert or lay opinion regarding fault but simply reflects that no improper driving by Miller was *apparent* based on Henson's limited investigation of the wreck. With respect to Bowie, regardless of whether Miller was also negligent or at fault, it is evident that Bowie did, in fact, fail to yield the right of way and was at least partially at

---

[2] As noted above, Henson is a trained accident reconstructionist, but he did not perform an accident reconstruction in this case.

fault in causing the wreck. The UCR's simple notation of this fact does not render it inadmissible. Therefore, in summary, the trial judge did not abuse his discretion by admitting the UCR under Rule 803(8) or by allowing Henson to testify about his limited investigation of the wreck.

## II. The trial judge did not clearly err by finding that Miller did not act in reckless disregard of the safety of others.

¶22. The MTCA provides a governmental entity with immunity from

> any claim . . . [a]rising out of any act or omission of an employee . . . engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c). The trial judge found that the County was immune from liability because "McKay . . . failed to prove by a preponderance of the evidence that Deputy Miller acted in reckless disregard."[3] On appeal, McKay argues that the evidence established that Miller acted in reckless disregard of the safety of others and that Miller's "conduct was a contributing factor to the accident in question." For the reasons that follow, we find that the trial judge's finding is supported by substantial evidence. Therefore, we affirm.

¶23. "Reckless disregard is a higher standard than gross negligence and embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *City of Vicksburg v. Williams*, 294 So. 3d 599, 601-02 (¶15) (Miss. 2020) (brackets and

---

[3] There is no dispute that Miller was engaged in police protection activities at the time of the wreck.

quotation marks omitted). It involves "not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Id.* at 601 (¶15) (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶13) (Miss. 2003)). "It typically involves a conscious indifference to consequences, and almost a willingness that harm should follow." *Hinds County v. Burton*, 187 So. 3d 1016, 1022 (¶17) (Miss. 2016) (quoting *City of Jackson v. Shavers*, 97 So. 3d 686, 688 (¶8) (Miss. 2012)).

¶24.    The trial judge's findings of fact following a non-jury trial "are subject only to a limited scope of review if the trial judge applied the appropriate legal standard." *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 746 (¶24) (Miss. 2008). It is the role of the trial judge, not this Court, to resolve conflicts in the evidence, evaluate the credibility of the witnesses, and determine the weight of the evidence. *Id.* at 746-47 (¶¶24-25). "If there is substantial supporting evidence in the record, this Court will not reverse a trial court's findings, even if this Court disagrees with those findings." *Id.* at (¶26). Moreover, we "must examine the entire record and must accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Id.* (comma, quotation marks, and brackets omitted).

¶25.    Applying our deferential standard of review, we cannot say that the trial judge clearly erred by finding that Miller's conduct did not rise to the high standard of reckless disregard.

In *Maye v. Pearl River County*, 758 So. 2d 391 (Miss. 1991), the Supreme Court held that a deputy sheriff acted with reckless disregard when he collided with another car while backing his patrol car up an incline in a parking lot toward an entrance to the lot. *Id.* at 394-95 (¶¶18-24). By backing up, the officer was blocking traffic entering the parking lot even though he admitted that he could not see what was behind him up the incline. *Id.* at (¶¶18, 21). Another car pulled into the parking lot, saw the officer still forty feet away, and blew her horn continuously until the officer backed into her. *Id.* at 394 (¶18). The Supreme Court stated that based on the significant damage to the other car and bodily injuries suffered by a passenger in the car, it was "obvious . . . that [the deputy] was going much too fast to be backing up the entrance to the parking lot when he could not see what was behind him." *Id.* at 395 (¶22). The Court held that the deputy was not simply negligent but "[w]ith conscious indifference to the consequences, he backed out knowing he could not see what was behind him." *Id.* at 395 (¶21).

¶26. In contrast, in *Vo v. Hancock County*, 989 So. 2d 414 (Miss. Ct. App. 2008), this Court held that a deputy who backed into another car in a parking lot was merely negligent and did not act with reckless disregard. *Id.* at 417-18 (¶¶11-13). The deputy testified that he could see behind him, and the evidence showed, at worst, that he failed to look one or both ways immediately before he backed up at a low rate of speed. *Id.*

¶27. In *Maldonado v. Kelly*, 768 So. 2d 906 (Miss. 2000), a deputy came to a complete stop at a "very dangerous [four-way] intersection." *Id.* at 908 (¶2). He looked both ways,

13

knowing that cross traffic did not stop, and then proceeded into the intersection, where he collided with another vehicle. *Id.* at (¶3). There was no evidence that the other vehicle was speeding, but the deputy apparently failed to see the vehicle because a water tower near the intersection "partially blocked his view" of approaching traffic. *Id.* The trial judge found in favor of the driver of the other car and awarded damages, but the Supreme Court reversed and rendered judgment in favor of the county. *Id.* at 907, 911 (¶¶1, 12-13). The Supreme Court held that the deputy was at most negligent and did not act with reckless disregard. *Id.* at 911 (¶12). The Court reasoned that whereas "negligence is a failure to exercise *due* care," wanton or reckless disregard "is a failure or refusal to exercise *any* care." *Id.* (emphasis added) (quoting *Turner v. City of Ruleville*, 735 So. 2d 226, 229 (¶16) (Miss. 1999)).

¶28. In this case, Miller acknowledged that he was traveling in excess of the speed limit en route to the emergency at French Camp. Miller estimated that he was driving around 65 miles per hour immediately before the collision, and the posted speed limit on Highway 12 was 55 miles per hour. On appeal, McKay asserts that the combination of witness testimony, the damage to the vehicles, and the post-crash movements of the vehicles "prove that more likely than not Deputy Miller was traveling well in excess of the posted speed limit of 55 miles per hour." However, Tomlinson merely testified that Miller was driving fast "like he was responding to something," and Moore testified she did not "know how fast he was going, just fast." In addition, Tomlinson testified that he was only traveling 45 or 50 miles per hour when Miller passed his chip truck. Moreover, there was no testimony that the damage to or

14

positioning of the vehicles indicated that Miller was traveling faster than 65 miles per hour. Based on all the testimony and evidence, the trial judge's finding that Miller was driving 65 miles per hour is supported by substantial evidence and is not clearly erroneous.

¶29. The trial judge also found that Miller had activated emergency lights and siren prior to the accident. Multiple witnesses testified that they saw Miller's blue lights. The trial judge acknowledged that although Miller testified that he was "positive" that he had activated his siren, the other witnesses did not recall hearing a siren.[4] Regardless, the trial judge was entitled to find Miller's testimony credible and find that he had both his lights and siren on prior to the accident.

¶30. Witnesses also testified that Miller had completely passed the chip truck and white sedan and had moved back into the westbound lane prior to the accident. There was no testimony that Miller passed the chip truck or white sedan illegally.

¶31. In summary, the trial judge reasonably found that Deputy Miller activated his lights and siren, accelerated to a speed of 65 miles per hour, and successfully passed two relatively slow-moving vehicles en route to a medical emergency. The trial judge also applied the correct legal standard, citing to relevant cases discussing the meaning of the "reckless disregard" standard. Based on all the evidence, a reasonable fact-finder could find that the cause of this unfortunate wreck was Bowie's negligence in driving directly into the side of

---

[4] Moore could not recall whether Miller had his siren on. She thought he had his siren on, but she was "not 100 percent sure."

Miller's patrol car. A reasonable fact-finder could also find that Miller was not deliberately or consciously indifferent to any high probability of harm. *Williams*, 294 So. 3d at 601-02 (¶15); *Burton*, 187 So. 3d at 1022 (¶17). That is, a reasonable fact-finder could find that Miller exercised at least *some* care. *Maldonado*, 768 So. 2d at 911 (¶12). Therefore, there is substantial evidence to support the trial judge's finding that McKay failed to meet his burden of proving that Miller acted with reckless disregard.

## CONCLUSION

¶32. The trial judge did not abuse his discretion by admitting the UCR or by allowing Henson to testify regarding the UCR. In addition, there is substantial evidence to support the trial judge's finding that McKay failed to prove that Miller acted in reckless disregard of the safety and well-being of others. Accordingly, we affirm the trial court's finding that the county is immune from liability.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

16